26  599
d71  _64

## David Bush, Jr. v. Harrison Cooper, Administrator, &c.

The bankrupt act of Congress of 1841, § 2, provides, that "nothing in this act shall be construed to annul, destroy, or impair any lawful rights of married women, or any liens, mortgages, or other securities on property, real or personal," &c. *Held*, that whilst it was the privilege of the debtor to be personally discharged from the debt, any security which the creditor might have, consisting of a lien on property, was left in as full force as though the debtor had never been discharged from his debt, for the security of which the lien was made.

As a general rule, whatever discharges a debt necessarily discharges the deed

Bush *v.* Cooper.

in trust on property executed to secure it; and this applies to cases where the debt has been actually paid, or where it was not supported by a valid legal consideration, or where the debtor *ex æquo et bono* is discharged from its payment. *Held*, that this rule does not apply to a case where an action upon the debt has been barred by the statute of limitations; and in such a case, the creditor may proceed to foreclose the mortgage, notwithstanding the bar of the debt by the statute of limitations.

A vendor or mortgagor will not be permitted to purchase in or set up outstanding incumbrances in derogation of the title conveyed by his deed, and of the assurances contained in it; and if he purchase an outstanding title, it enures to the benefit of the vendee. *Hardeman* v. *Cowen*, 10 S. & M. 486; *Champlin* v. *Dotson*, 13 Ib. 559.

Under our laws, the terms " grant, bargain, and sell," in a deed of conveyance, of themselves import covenants of general warranty of title, and against incumbrances and for quiet enjoyment, as effectually as though such covenants had been expressly contained in the deed. 7 S. & M. 422; Ib. 727; Ib. 744.

If the grantor in this deed had not been discharged in bankruptcy from the debt, he could not be permitted to set up the title under the judgment against the covenants in the deed of trust.

The 4th section of the bankrupt act of 1841 declares that the certificate of discharge is to be " deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt, which are provable under this act." *Held*, in this case the deed first conveys the property, and then covenants that the grantor has a good right to convey it, and that it is free from incumbrances, and he will defend the title, &c.; the covenants, not being regarded as an obligation to pay the debt, it was not of a character to render it provable in the bankruptcy. It amounts merely to an obligation to pay to the creditor whatever damages he may sustain by the property being taken by adverse claims, or subjected to prior incumbrances.

The claim of the creditor in such a case would be one purely of damage, not reducible to any certain and specific amount, and which could not be ascertained but by the verdict of a jury; and such a claim is not provable in bankruptcy, either in this country or in England.

The breach of covenants in this case against adverse claims, and for quiet enjoyment, did not take place until after B. had been discharged in bankruptcy; though the lien existed prior to the discharge, yet it might never be enforced.

*Held*, that B. was not discharged from his covenants in the deed of trust, and consequently, he is estopped from setting up his subsequent acquired title against the claim of the appellee.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The bill was filed by the appellee, as administrator of Maborn Cooper, deceased, for the purpose of subjecting lot No. 1 in square No. 9, in the suburb St. Mary, of the town of Port Gibson, to the payment of two judgments held by the intestate of appellee Bush.

The bill alleges that the firm of J. O. Pierson & Co., consisting of J. O. Pierson and the appellant, with Eli C. Briscoe as their surety, on the 16th April, 1839, executed two promissory notes to W. T. and T. B. Dyer, one due in November, and the other in December, 1839. That on the 17th March, 1840, the said J. O. Pierson & Co., in consideration that the said Dyers would extend the time of payment of said notes, executed to E. C. Briscoe and George W. Elmer, as trustees, a deed of trust, in and by which they conveyed said lot 1, in square 9, to said trustees, to secure the payment of said notes. That, subsequently the two Dyers obtained judgments on said notes, and that on the 22d January, 1845, they sold and transferred said judgments, notes, and deed of trust, to Maborn Cooper, for $1,000; and that no part of said judgments has been paid. The bill then sets forth and attacks a sale of said property, under a judgment of *Thomas et al.* v. *J. O. Pierson & Co.* The bill then alleges, that Pierson and Bush are discharged bankrupts, and that Briscoe is insolvent; and that the only hope of making any thing rests upon the deed of trust.

The bill then alleges, that on the 21st October, 1844, said lot 1, in square 9, was sold at sheriff's sale, under a judgment rendered in June, 1838, in favor of Nelson, Carleton & Co. against J. O. Pierson & Co. and others, and purchased at said sale by the appellant Bush for $1,033. It is then charged, that Bush, the appellant, ought to have advanced the money at once for the protection of said property under the deed of trust; that his purchase is fraudulent and void, or at any rate, that it enures to the benefit of the deed of trust.

Bush, the appellant, admits, in his answer, the making of the notes, and the execution of the deed of trust. He then sets up and pleads his discharge as a bankrupt, on the 20th February, 1843, and files his certificate of discharge, as exhibit No. 1, to his answer.

He admits his purchase of said property at sheriff's sale, on the 21st October, 1844, and relies on the sheriff's deed to him. He avers that he paid for said property, with money acquired by him since his discharge in bankruptcy, and claims title to it against all the world.

The court below sustained the prayer of the bill, and Bush appealed to this court.

*John B. Coleman,* for appellant.

The deed of trust was executed by J. O. Pierson & Co., on the 17th March, 1840. The judgment of Nelson, Carleton & Co., under which Bush purchased the property, was rendered against J. O. Pierson & Co., in June, 1838, and was a lien nearly two years older than the deed of trust. The title of Bush, then, must prevail against the deed of trust, unless it can in some way be invalidated. This is attempted to be done upon the ground that Bush, being one of the grantors in the deed of trust, was bound to protect the title thereby conveyed, and that, consequently, his subsequent purchase of the paramount title enures to the benefit of the *cestuis que trust.*

In ordinary cases this position could not be controverted. It cannot, however, be applied here.

Bush was regularly discharged as a bankrupt on the 20th February, 1843. He made this purchase on the 21st October, 1844, and he paid for it with means acquired by him after his discharge.

The effect of a discharge in bankruptcy is thus prescribed by the act of Congress, as set forth in the record, and "such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements, of such bankrupts, which are provable under this act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever; and the same shall be conclusive evidence," &c.

The notes given by J. O. Pierson & Co. to the Dyers were both made, and the judgments upon them rendered anterior to the discharge of Bush. We think, then, we may safely assume,

Bush *v.* Cooper.

that by his discharge Bush was released and acquitted of all liability upon said notes and judgments.

This court has uniformly decided, that when a promissory note secured by mortgage or deed of trust is assigned, the mortgage or deed of trust passes with it, without the necessity of any transfer or assignment of the mortgage or deed of trust; and this upon the principle, that the note is the principal, and the deed of trust or mortgage the incident. *Torrey* v. *Wood*, 6 S. & M. 139; *Dick* v. *Maury*, 9 Ib. 448; *Henderson* v. *Harris*, 10 Ib. 631.

It seems that the lien of a mortgage will at least continue in force, as long as the debt it is intended to secure is binding. *Morse* v. *Clayton*, 13 S. & M. 373. The notes made by Bush were thus the principal, the deed of trust but the incident.

By his discharge in bankruptcy, Bush was as fully and completely discharged from all liability to pay said notes, or the judgments rendered upon them, as if he had paid them, and held a receipt in full against them.

Now, if he has been discharged from the debt, upon what principle, we ask, can he be held liable upon the security he has given for the debt? The debt being extinguished, annihilated, it must follow that the security is likewise extinguished. Suppose that instead of executing the deed of trust, Pierson & Co. had transferred paper to the Dyers, as collateral security for their notes, could Bush, after his discharge, have been held liable on this collateral paper?

His liability under the deed of trust depended upon his liability for the payment of the debt the deed of trust was executed to secure. When his liability for the payment of the debt, the principal, was extinguished, his liability upon the deed of trust, the incident, was surely extinguished also.

The object and policy of the bankrupt law was to release and exonerate individuals from all their liabilities incurred prior to the date of the decree declaring them bankrupts.

This court says: " The debts of a discharged bankrupt are annihilated by the decree in bankruptcy; a subsequent promise, therefore, by the bankrupt to pay a debt from which he has been thus discharged, though in writing, is void for want of consideration." *Rice* v. *Maxwell*, 13 S. & M. 289.

The supreme court of the United States say : " When the surety upon a note pays the same after the maker's discharge in bankruptcy, though the note became due after the discharge, he is not entitled to recover the amount from the bankrupt." 7 Story, U. S. R. 272 ; 10 Mis. R. 473 ; 10 Ala. R. 589 ; 2 Burr. 343.

These decisions indicate the opinions of the courts as to the construction to be given to the bankrupt law, that it is to be liberally construed for the benefit of the bankrupt.

Now, we ask, of what benefit would it be to a bankrupt to discharge him from a debt, and to hold him liable and bound upon a security he has given for that debt ?

It is contended by the counsel of the appellee, that although the notes given by Bush were provable under the act of Congress, the covenants in the deed of trust were not, because they were not broken until after the discharge of Bush.

We think we have shown, that when Bush was discharged from liability on the notes, he was also discharged, of necessity, from liability upon his covenants in the deed.

Why is it that a bankrupt is not liable to a surety who pays the debt after the bankrupt's discharge, and whose claim against the bankrupt does not, therefore, accrue until after his discharge ? For the simple reason, that the principal having been discharged, the surety does not pay the debt for the principal.

The analogy between that case and the one at bar, we consider complete.

But we hold that the covenants of .Bush were provable against him in bankruptcy, and that they were broken prior to his discharge.

The bill shows that the trustees never got possession of the property conveyed by the deed. This was certainly a breach of the covenant for quiet enjoyment, and was as much of a breach in 1842 as it is now. The covenant that the grantor was seized of an indefeasible estate in fee-simple, freed from incumbrances done or suffered by the grantor, was broken at the instant of the delivering of the deed, for at that very moment the Nelson, Carleton & Co. judgment constituted an incumbrance upon the property.

These covenants, which are implied in the words "grant, bargain, and sell," were thus existing claims against Bush before his discharge in bankruptcy, and by that discharge we hold that he was released from them.

We submit, then, that Bush stood in the same relation to the property in controversy, after his discharge, that he would have occupied had he never executed the deed.

Suppose some third person had purchased this property at the sale under the Nelson, Carleton & Co. judgment, could Bush have been held liable for its value? Certainly not, and this we consider a conclusive test.

*J. B. Thrasher*, for appellee.

After the maturity of the notes, the Dyers sued and obtained judgment at law, and execution thereon was returned "no property." Subsequently, the Dyers sold and assigned the judgment to complainant's intestate, which is still wholly unpaid, and the complainant is entitled to collect it, and to subject the property, thus conveyed in trust, to the payment of the same, according to the decree of the chancellor.

" A person, not a party to the execution, may advance money upon it, and, by agreement, have it assigned to himself, and thus keep it in force. But if such person pay an execution, in whole or in part, without an agreement that it is not to operate as a discharge, or without taking an assignment, the execution will be *pro tanto* satisfied, and cannot be afterwards enforced." *Morris* v. *Lake*, 9 S. & M. 325; *Reed* v. *Pruyn*, 7 Johns. R. 426; *Shernan* v. *Boyer*, 15 Johns. R. 440; *Howell* v. *Worsham*, 2 Plum. 525.

The deed of trust, being an incident to the judgment, follows it into complainant's hands. " A mortgage to a surety, to secure him, is, in effect, a security for the debt, and the creditor is entitled to the benefit of it." *Moore* v. *Morberly*, 7 B. Monroe, R. 299; *Dick* v. *Maury*, 9 S. & M. 448. In the language of Chancellor Kent, (in his opinion,) in the case of *Neimceivicz* v. *Gahn*, 3 Paige, R. 625, " the pledge is attached to the debt, and lives with it, as long as the debt lives."

There is a *pro confesso* against all the parties, except Bush.

51 *

Bush *v.* Cooper.

He denies that the judgments are unsatisfied, and says that Cooper paid them, with Briscoe's money, for Briscoe's benefit. This is a confession and avoidance, and Bush must prove the payment. The bill is *primâ facie* proven by the judgment and assignment, and Bush has offered no proof. He might have examined Briscoe, or Thrasher & Sillers, who transferred the judgment; but not having done so, the allegation fails, for want of proof. *Hart* v. *Eyich*, 2 Johns. Ch. R. 62; *Russell* v. *Moffit*, 6 How. R. 303; *Ferriday* v. *Selcer*, Freeman, Ch. R. 258, 502.

The point, upon which Bush makes his main defence, is, that he purchased the trust property under the Nelson, Carleton, & Co. judgment, after his discharge in bankruptcy; that judgment being older than the deed of trust. He insists that by his discharge in bankruptcy, he is discharged from the obligations and covenants in the deed of trust, and was *entitled to purchase* under the judgment in October, 1844, and to hold the property under such purchase, adverse to the grant and provisions in the deed of trust.

For the purpose of compelling Bush to preserve his integrity and good faith under the deed, the court will affect his conscience, and prevent him from setting up such an unfair defence. 1 Story, Eq. 187.

Where confidence is reposed, and one party has it in his power in a secret manner, for his own advantage to sacrifice those rights which he is bound to protect, he shall not be permitted to hold any such advantage. 1 Story, Eq. § 323.

Whatever title Bush may have acquired at the execution sale under the Nelson, Carleton, & Co. judgment, it enures to the benefit of complainants. In the deed of trust, he covenanted against incumbrances, and for quiet enjoyment to the grantor, by the use of the words "grant, bargain, and sell." And it is well settled that a vendor who sells land to which he has no title, either in law or in equity, but to which he subsequently acquires a title, such title enures to the vendee. Thus the rule is laid down by Judge Weston, in the case of *Fairbanks* v. *Williamson*, 7 Greenl. R. 100. "The fruit and effect of a warranty in a deed, is, that it concludes the warrantor, so that all

his present and future rights that he hath, or may have, in the land, are thereby extinct." Shep. Touch. 181. And this to avoid circuity of action. Co. Lit. 265 a. That this is the consequence of a deed with warranty, is recognized in *Jackson* v. *Matsdorf,* 11 Johns. 97; *Mc Crackin* v. *Wright,* 14 Ib. 194; *Mason* v. *Muncaster,* 9 Wheat. 454; *Somes* v. *Skinner,* 3 Pick. 52; *Jackson* v. *Buel,* 1 Johns. C. 81; *Jackson* v. *Murray,* 12 Johns. R. 208; *Aldridge* v. *Kincaid,* 2 Litt. R. 390; *Massie* v. *Sebastian,* 4 Bibb, R. 436; *Gallaway* v. *Finley,* 12 Peters, 264.

If one, having no title to land, conveys the same by mortgage which is duly recorded, and he afterwards acquires a title and conveys to a stranger, the second grantee is estopped to aver that the grantor was not seized at the time of his mortgage to the first grantee. *White* v. *Patton,* 24 Pick. 324; *Fairbanks* v. *Williamson,* 7 Greenl. R. 96.

A mortgagor in an action against him for the recovery of the premises, is estopped from denying that he had title at the time of the execution of the mortgage, and from setting up an outstanding title in another. 5 Halst. 102; *Barber* v. *Harris,* 15 Wend. 615; *Wilkinson* v. *Scott,* 17 Mass. 257; *Jackson* v. *Murray,* 12 Johns. 203; *Jackson* v. *Stephens,* 13 Ib. 316, 320. These are general principles, and must govern this case; but they do not perhaps embody the strongest view of this question. If it be true, as Bush says, that Briscoe, the surety, paid the money in January, 1845, (after Bush's discharge,) still Bush is not discharged from the debt. It is well settled that a surety, paying a debt as such for his principal, after the discharge of the latter in bankruptcy, may maintain his action for money paid, notwithstanding the certificate; the suretyship being undertaken before the bankruptcy, and the money being paid afterwards; for it is not a debt due from the principal to the surety, until the surety pays it, and consequently not a debt from which the bankrupt could be discharged. *Frost* v. *Carter,* 1 Johns. C. 74; *Ford* v. *Andrews,* 9 Wend. 312; *Mechanics and Farmers Bank* v. *Capron,* 15 Johns. R. 468; 2 Cowp. 525; 3 Wills. 346; 1 T. R. 599; 8 Ib. 388; Com. on Cont. 396; Chitty on Bills, 580, 5th ed.; *Frost* v. *Carter,* Caines' C. 311; *Murray* v. *De Rottenham,* 6 Johns. Ch. R. 66; *Buel* v. *Gordon,* Ib. 126; *Lansing* v. *Prendergast,* 9 Ib. 127.

From what is a bankrupt discharged? By the 4th section of the bankrupt act, he is discharged only from all debts, contracts, and other engagements of such bankrupt, which are provable under the commission, &c. If Briscoe paid the money at all, he paid it in January, 1845. How, then, could he prove his claim before the commission of bankruptcy, or how could Bush be discharged from a debt that did not arise for eighteen months after the decree of bankruptcy?

In the 2d section of the bankrupt act of 1841, it is provided that nothing in said act contained, shall be construed to annul, destroy, or impair any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the States respectively. The deed of trust is, therefore, not destroyed or impaired by Bush's discharge. By the 4th section of the same act, it is provided that only the debts, contracts, and other engagements of such bankrupt, which are provable under the commission, &c., are discharged by the final decree of bankruptcy.

And here the question arises, Is Bush discharged from the statutory covenants contained in the deed of trust, by the use of the words "grant, bargain, and sell?" In H. and H. 349, § 32, it is provided that the words "grant, bargain, and sell," used in all deeds or conveyances, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit, that the grantor was seized of an indefeasible estate in fee-simple, freed from incumbrances done or suffered from the grantor; as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed.

If the breach had been presented to the assignee, it would have been in the shape of unliquidated damages, and he could not determine the extent of damage. But the covenant for quiet enjoyment has passed to complainant by the assignment. "The covenant for quiet enjoyment is prospective, and an actual ouster or eviction is necessary to constitute a breach of it. It is therefore in the nature of a real covenant, and it runs with the land conveyed, and descends to the heirs and vests in assignees or purchasers." 4 Kent, Com. 471; *Greenly* v. *Wilcox*, 2 Johns. 1; *Keer* v. *Shaw*, 13 Ib. 236; *Withy* v. *Munford*,

5 Cow. R. 137; *Birney* v. *Hann*, 3 Marsh. R. 324; *Marston* v. *Hobbs*, 2 Mass. 439; *Chapman* v. *Holmes*, 5 Halst. R. 20.

There was no breach of this covenant until October, 1844, when Bush bought the property under the judgment. It was then that the real damage was done to the covenants against incumbrance and for quiet enjoyment. From that time, he held possession as purchaser, and committed eviction. He admits he is in possession, and is renting out the property. If he was not discharged from the covenant for quiet enjoyment by his bankruptcy, he was not at liberty, by purchase under an outstanding incumbrance, to disturb the quiet enjoyment of his grantees, and their assignees; and, as we have seen, the title thus acquired enures to his grantee; and complainant could force him to extinguish his own incumbrance suffered.

He is not discharged from the covenant for quiet enjoyment. It had not been broken at the time of the bankruptcy. There was no ouster or eviction until October, 1844. He was not liable to a suit upon it until October, 1844. How, then, could it have been presented and proved before the assignee? What could have been claimed out of his assets upon this covenant?

It will, no doubt, be contended, that this covenant is one from which bankrupts are discharged, under the words "contract, and other engagements," contained in the act. But it must be remembered that the contract or other engagement must be such as is provable before the commissioner. It must be liquidated, not contingent, and appear in a shape that the assignee can determine the extent of the claim, so as to give the creditor his proportion of the assets upon distribution. In the case of *Deesar* v. *Murgotroyd*, 1 Wash. C. C. R. 13, it is decided "that where the original cause of action is founded on contract, but the immediate cause arises *ex delicto*, and the claim is for damages, unliquidated by any express agreement, or such as the law will not imply an agreement to pay; the certificate of bankruptcy is no bar, because such claim could not have been proved under the commission."

So, also, in a case of bond or judgment for idemnity merely; or where a party is merely bail or surety, there is no debt provable under the commission, until the party is actually 'damnified

by payment; and in such case, if the surety pay after the discharge, the certificate will be no bar, because the debt to the surety accrues only upon payment, and before that time it is contingent, whether the debt will ever accrue; and it is not a debt due and provable until payment. *Rosevelt* v. *Mark*, 6 Johns. Ch. R. 286, 287, and cases cited.

A discharge is not a bar to the recovery of lands wrongfully withheld. 7 Met. 10. Nor a bar to a proceeding *in rem* to enforce a mechanic's lien. 5 Pike, 237. Nor a discharge from a cause of action in trespass, even after verdict, if judgment has not been entered. *Kellogg* v. *Schuyler*, 2 Denio, R. 73. Nor a discharge from a *tort*. *Grouch* v. *Gridley*, 6 Hill's N. Y. R. 250. Nor a discharge from a fine imposed by the chancery court for a wilful violation of an injunction. *Spaulding* v. *The People*, 7 Ib. 301; 2 Denio's R. 570.

A contract for the sale of an estate will not be discharged by the bankruptcy of either the vendor or vendee. 1 Sug. on Vend. 171; *Olebar* v. *Fletcher and the Duke of Kent*, 1 P. Wms. 737; *Brooke* v. *Hewit*, 3 Ves. 255; *Ex parte Hunter*, 6 Ves. 96; *Whitworth* v. *Davis*, 1 Ves. & Beam. R. 545.

Mr. Justice HANDY delivered the opinion of the court.

This bill was filed by the appellee in the superior court of chancery, to foreclose a deed in trust executed by the appellant on the 17th March, 1840, conveying certain real estate in the town of Port Gibson to trustees, to secure the payment of two promissory notes made by the appellant, and afterwards transferred to the appellee. The facts necessary to be taken into view, in considering the questions presented for determination, are as follows: —

The notes secured by the trust deed were due in January and February, 1841; and in November, 1842, a judgment at law was rendered upon them against Bush, which judgment and the deed in trust were afterwards trsnsferred to the appellee, and remain unpaid. The deed, in conveying the property, contains the words "grant, bargain, and sell," but contains no other covenant of warranty in express terms.

The appellant was discharged as a bankrupt in February,

1843; and in October, 1844, he purchased the property embraced in the deed in trust at sheriff's sale, under an execution on a judgment rendered in June, 1838, against the appellant, and which was unsatisfied, for the sum of $1,033, by means acquired by him after his discharge as a bankrupt; and in virtue of that purchase, he now claims to hold the property by title paramount to the lien of the deed in trust. On the contrary, the appellee claims that the property is subject to the payment of the debt secured by the deed in trust, notwithstanding the discharge of the appellant as a bankrupt, and that the appellant's purchase, under the prior incumbrance, cannot be set up by him to defeat the security of the deed in trust.

The first question to be settled is, whether the discharge of the appellant from the debt, by his certificate as a bankrupt, extinguished the deed in trust.

It is insisted, on his behalf, that the deed was but a mere *incident to the debt*, and that whatever discharged the debt necessarily destroyed the deed, because the security could not exist where the debt, which was its foundation and support, was discharged. This is undoubtedly well sustained by modern decisions, as a general rule; but it is not without exceptions. It is held to apply in all cases where the debt has been actually paid, or where it was not supported by a valid legal consideration, or where the debtor *ex æquo et bono* is discharged from its payment. But it is held not to apply to a case where an action upon the debt has been barred by the statute of limitations, and that the creditor may proceed to foreclose his mortgage, notwithstanding the bar of the debt by the statute. *Miller* v. *Helm*, 2 S. & M. 697; *Miller* v. *Trustees of Jefferson College*, 5 Ib. 650; *Bank Metropolis* v. *Gultshtick*, 14 Peters, 19; *Thayer* v. *Mann*, 19 Pick. 535.

In addition to this, the objection is fully met by the second section of the bankrupt act of Congress of 1841, which provides, that "nothing in the act shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or any liens, mortgages, or other securities on property, real or personal," &c. From this it is manifest that, while the privilege was granted to the debtor to be personally discharged

from the debt, any security which the creditor might have, consisting of a lien on property, was left in as full force as though the debtor had never been discharged from the debt, for the security of which the lien was made.

The second question, then, presented is, Whether Bush is estopped by the deed from setting up his title acquired under the judgment, which was a lien existing at the date of the deed, in opposition to the title conveyed by the deed? This is a question of great importance, in its direct and collateral bearings; and it has been carefully considered by the court.

It is undoubtedly true, that a vendor or mortgagor will not be permitted to purchase in or set up outstanding incumbrances in derogation of the title conveyed by his deed, and of the assurances contained in it, and that if he purchases an outstanding title, it enures to the benefit of his vendee. *Hardeman* v. *Cowen*, 10 S. & M. 486; *Champlin* v. *Dotson*, 13 Ib., and cases there cited. And it is held that, under our laws, the terms "grant, bargain, and sell," in a deed of conveyance, of themselves import covenants of general warranty of title, and against incumbrances and for quiet enjoyment, as effectually as though such covenants had been expressly contained in the deed. 7 S. & M. 422; Ib. 727; Ib. 744.

If the grantor in this deed had not been discharged by bankruptcy from the debt, there can be no question but that he could not set up the title under the judgment against the covenants in the deed. The question, then, arises, Are the covenants in the deed still in force, and is he bound by them, notwithstanding his discharge under the bankrupt law; and is he entitled, by reason of his discharge, to take the position of a mere stranger in relation to the property conveyed by his deed?

By the 4th section of the bankrupt act, the certificate of discharge is to be "deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt, which are provable under this act." We have above seen that mortgages and liens on property were preserved; and by this portion of the act, the extent to which the personal discharge of the party from his debts, contracts, and engagements was

Bush *v.* Cooper.

intended to go, is limited and defined; and we have only to inquire, then, whether the covenants in the deed were "debts, contracts, or engagements," provable under the bankrupt act.

It is insisted, in behalf of the appellant, that the covenants were merely incidental to the debt, and as the debt was provable, so was its mere incident or security. This argument would apply with equal force to the deed as a security for the debt, as to the covenants contained in it; but we have seen above that it does not apply to the deed. The deed contains two essential and distinct qualities : first, it conveys the property as a security for the debt; and secondly, it covenants that the grantor has good right to convey it, that it is free from incumbrances, and that he will defend the title against the claims of all persons whatever. The pledge of the thing to pay the debt, and the covenant that the party has the right to make the pledge, are wholly distinct from each other; one is executed, the other executory. If, when the creditor seeks to avail himself of the property which the debtor has conveyed to secure his debt, he finds that it has been subjected to other incumbrances, he is entitled to his action against the covenantor for damages for the breach of his covenant; and this right of action accrues upon covenants against incumbrances at the time when the incumbrance is enforced, or the adverse title asserted. This is a right superadded to the conveyance of the property, as the conveyance gives a right in addition to the debt; it is a security to the conveyance, as the conveyance was a security for the debt.

Nor can the covenants be regarded as an obligation to pay the debt, thereby reducing the claim to a form or character to render it provable in bankruptcy. It amounts merely to an obligation to pay to the creditor whatever damages he may sustain by the property being taken by adverse claims, or subjected to prior incumbrances. The property may be worth more or less than the amount of the debt at the time of the incumbrance suffered. There is no covenant as to its value, and if it is subjected and sold in satisfaction of the debt without adverse claim or incumbrance, the covenants are satisfied, without regard to the value of the property, or the amount of its avails. The claim of the

creditor, therefore, is one purely for damages, not reducible to any certain and specific amount, and which could not be properly ascertained but by the verdict of a jury; and it is well settled, that such claims cannot be proved in bankruptcy, either in England or in this country. Eden, Bankrupt Law, 132, 133, and casest here cited; *Murray* v. *De Rottenham*, 6 Johns. Ch. R. 52; 1 Wash. C. C. R. 13; 4 Binney, 269.

In this case, the breach of the covenant against adverse claims, and for quiet enjoyment, did not take place until after the appellant had been discharged as a bankrupt. Though the prior lien existed before the discharge, it might never be enforced, and the creditor could not assert any right in a legal point of view, upon the assumption that it would be enforced. Certainly the amount of damages could not be ascertained, even by a jury, until the lien was enforced. This shows conclusively, that it was not such a claim as could have been proved under the bankruptcy.

It follows from this view of the subject, that the appellant was not discharged from his covenants in the deed, and consequently that he is estopped from setting up his subsequently acquired title against the claim of the appellee. As a legal proposition this conclusion is well sustained by expositions given to the bankrupt laws by very high authorities. In an equitable point of view, the position of the appellant would not be more favored. After having pledged the property as a security for the payment of the debt, he would scarcely be heard, in point of mere equity, to set up a claim to the same property, founded on the existence of a prior lien which he had covenanted against, and thereby deprive his creditor of the security he had given, and appropriate the property to himself.

The decree of the chancellor is affirmed.