L. A. WINTERS ET AL. *v.* W. C. CLAITOR ET AL.

54  341
78  582

1. CHANCERY. *Appeal. Condition of bond.*
   An appeal bond from a final decree in chancery, where no *supersedeas* is granted, is not good, if conditioned as provided in § 410 Code 1871, and not as provided in § 1252 or § 1254.

2. SAME. *Writ of error. Bond.*
   A writ of error is matter of right without bond, that being required only for *supersedeas. Swann* v. *Horne, ante,* 337.

3. SAME. *Presumption as to petition. Writ of error. When supplied.*
   On petition to the chancery clerk for appeal from a final decree, he issued a writ of error, and took a void appeal bond. *Held,* on motion in the Supreme Court to dismiss for want of a bond, that the writ of error being regular, a petition therefor would be presumed, and that the good writ of error not being vitiated by the bad appeal, the motion should be denied. *Semble,* if in such case there were no writ of error, the court would not dismiss, but, upon the duly certified record filed here, would order a writ of error to be issued by the clerk of the Supreme Court, in accordance with rule 24 of said court, which is as applicable to defective or void appeals as to writs of error, and will, when necessary, be so applied.

4. SAME. *Jurisdiction. Lien. Equitable assets.*
   Where an insolvent debtor purchasing land fraudulently procures the title in his wife's name, decrees enrolled against him before the purchase do not constitute a lien on the land, which is equitable assets to be reached by the creditors in chancery. *Carlisle* v. *Tindall,* 49 Miss. 229, cited.

5. SAME. *Bill to reach equitable assets. Bankruptcy of debtor.*
   In such a case, after the debtor is adjudicated a bankrupt, the State Chancery Court has no jurisdiction of a bill to subject the equitable assets at suit of the creditor. Upon bankruptcy, the bankrupt's rights pass to the assignee ; and the filing of the bill in the State court would be the inception of the lien on the equitable assets.

6. BANKRUPTCY. *Fiduciary creditors. Sect. 33 Bankrupt law.*
   The effect of § 33 of the Bankrupt Act (U. S. St. of 1867, c. 176) is not to interfere with an equal distribution of the bankrupt's estate among creditors, but to place the fiduciary creditor upon the same footing with the others, except that he is unaffected by the discharge.

7. PLEA IN CHANCERY. *Practice where insufficient in law.*
   A demurrer to a plea in chancery is improper. The plea should be set down on its sufficiency in law.

ERROR to the Chancery Court of Attala County.

Hon. R. W. WILLIAMSON, Chancellor.

After the transcript of the record of this case from the court below was filed in the Supreme Court, a motion was made to dismiss the cause, upon the ground that the appeal bond was defective.

*Frank Johnston,* for the motion.

*Thomas A. McWillie, contra.*


CAMPBELL, J., delivered the opinion of the court.

This is a motion to dismiss this case because "no appeal bond has been given in the terms and conditions required by the statute." A final decree was rendered by the Chancery Court against L. A. Winters, and Margaret, his wife, and George Winters, and they petitioned the clerk in writing for an " appeal." The clerk issued a writ of error, and took a bond conditioned as prescribed in § 410 of the Code, which is precisely the same as that prescribed by § 411 for writs of error, except that the word " appeal " is used instead of " writ of error." No *supersedeas* was applied for or granted. The bond is not conditioned as prescribed by either of the sections of the Code for appeals from final decrees of a Chancery Court. §§ 1252, 1254. It recites that an *appeal* had been obtained, and is conditioned to prosecute the *appeal* with effect. This bond is not good as an appeal bond.

But this case is here by writ of error as well as by appeal, and a writ of error is a matter of right, without bond ; a bond being required only for *supersedeas,* as held in *Swann* v. *Horne, ante,* 337. The case is, therefore, here by an appeal which is not in conformity to law, because the bond is not properly conditioned, and by writ of error, without bond, which is a proper mode of bringing it here. Shall it be dismissed because the parties prayed an appeal, and got a bad appeal and a good writ of error ? Will it be said that they did not *petition* the clerk for a writ of error? It will be presumed that they did. *Tombigbee Railroad* v. *Bell,* 4 S. & M. 685. The statute does not require a petition in writing. The whole object of a petition is to move the clerk to issue the writ, and its issuance is evidence of the request for it.

If there was no writ of error in the case, we would not dismiss it, but, upon the duly certified record filed here, would order a writ of error to be issued by the clerk of this court in accordance with rule 24 of this court, which is just as applicable to defective or void appeals as to writs of error, and will, when necessary, be so applied.        *Motion denied.*

The case then proceeded to final hearing on the merits.

*Nugent & McWillie*, for the plaintiffs in error.

1. The decrees sought to be enforced, which were mere personal decrees for so much money, were not liens *per se*, nor did they become such by subsequent enrolment. Code 1871, §§ 830, 1263; Acts 1876, p. 193.

2. If liens *per se*, or duly enrolled, still they are not operative on the land in controversy. *Carlisle* v. *Tindall*, 49 Miss. 229.

3. In the absence of a lien, the State court is without jurisdiction. *Allen* v. *Montgomery*, 48 Miss. 101; Bump on Bankruptcy (9th ed.), 210, 211.

4. Even admitting that the liens existed, they were not of a character to confer jurisdiction on the State court. *Davis* v. *Anderson*, 6 B. R. 145; *Jones* v. *Leach*, 1 B. R. 595; *Pennington* v. *Sale*, 1 B. R. 572.

5. The character of the debt as fiduciary does not give the State court jurisdiction.

*Campbell & Anderson*, on the same side.

1. The bill does not show a case within the Statute of Frauds, it not being a conveyance from the debtor; and the complainants fail to trace by proof the funds of the debtor into the property sought to be condemned. *Edmonson* v. *Meacham*, 50 Miss. 34.

2. It was error to sustain the demurrer of the complainants to the defendants', plea of bankruptcy properly pleaded. *Gibson* v. *Green*, 45 Miss. 209.

3. This bill was filed pending the bankruptcy of L. A. Winters. That a State court has no jurisdiction to protect a creditor whose debtor is in bankruptcy, is not an open question in this State. *Allen* v. *Montgomery*, 48 Miss. 101; *Stevens* v. *Durrett*, 49 Miss. 411. When a debtor goes into bank-

ruptcy, his legal existence is destroyed, so far as the State courts are concerned. The jurisdiction of his person and property is in the bankrupt court, where creditors must go. Upon the filing of a petition, the property of the petitioner, as well that in possession as that conveyed in fraud, vests absolutely in the assignee for the benefit of all the creditors, except in cases where creditors have a recognized lien under the State laws. In this case these creditors had no lien by virtue of their decrees, because judgments and decrees are a lien only on the property of the defendant after enrolment. Code 1871, § 830; Bump on Bankruptcy, 174, 175, 367, 460, 462, notes, 476; Bump on Fraudulent Conveyances, 519.

*Butt & Scarborough*, for the defendants in error.

1. The court did not err in sustaining the demurrer to the plea setting up bankruptcy. (1.) The facts charged in the bill and admitted by the plea, showing that the liability of Winters, on which the decrees were based, was of a fiduciary character, bring the case within the exception in the Bankrupt Act. U. S. St. of 1867, §§ 32, 33, 35; *Halliburton* v. *Carter*, 55 Mo. 435. (2.) The plea left unanswered the charge of fraud, which is the *gravamen* of the bill. Story's Eq. Pl. §§ 693, 694. (3.) It was bad for want of certainty. Gould's Pl. c. 3, § 58, c. 5, §§ 66, 144. (4.) A release in bankruptcy is a personal privilege. Congress may create rights and remedies within constitutional limits; but, where invoked, those rights and remedies must be pursued according to the forms of law.

2. The discharge in bankruptcy of the debtor was not a defence to this bill. The bankrupt court had not jurisdiction to release a liability of this character, unless the appellees had proved their claim and accepted a *pro rata* share. *Chapman* v. *Forsyth*, 2 How. (U. S.) 202. A discharge without jurisdiction is void. *In re Penn*, 3 B. R. 145; 4 B. R. 99. And this fatal defect may be shown in any court where the discharge is sought to be pleaded. *In re Goodfellow*, 3 B. R. 114; *In re Kimball*, 2 B. R. 74; *In re Rosenberg*, 2 B. R. 81; *In re Clarke*, 2 B. R. 44.

3. The lien creditor, however, preserves his remedy notwithstanding the discharge. *Gibson* v. *Green*, 45 Miss. 218.

The assignee in bankruptcy having taken no action with reference to the land, the State court has jurisdiction to make the lien available. *Reed* v. *Bullington*, 49 Miss. 223; *Bush* v. *Cooper*, 26 Miss. 599.

4. The plea must allege that the debt was provable under the Bankrupt Act. This plea fails so to allege. *Hayes* v. *Flowers*, 25 Miss. 169.

5. Counsel then reviewed the case of *Allen* v. *Montgomery*, 48 Miss. 101, contending that it had been misapprehended by adverse counsel, and was in no way analogous to the case before the court.

6. One having a lien upon property fraudulently conveyed by a bankrupt may prosecute a suit to enforce it, which was instituted before the commencement of proceedings in bankruptcy, even though the discharge is pleaded in bar. *Payne* v. *Able*, 4 B. R. 67. An injunction will be dissolved when the bankrupt claims that the property belongs to his wife, as in this case, and the assignee asserts no claim, and no general creditor is injured by it. *In re Scott*, 2 B. R. 443. In fact, it is only by injunction that a proceeding of this character can be stopped.

*Frank Johnston*, on the same side.

1. The objection made by the plea did not raise a question as to the jurisdiction of the court. It only set up the discharge of Winters. The idea is that the discharge operated as the personal release of Winters, and is, therefore, fatal to the suit.

2. Where a creditor of a bankrupt has a valid and effectual lien by judgment of a State court, the State court has jurisdiction and power to enforce such lien. (1.) This was true under the act of 1841. *Savage* v. *Best*, 3 How. (U. S.) 118; *Norton* v. *Boyd*, 3 How. (U. S.) 436; *Peck* v. *Jenness*, 7 How. 623; *Russell* v. *Cheatham*, 8 S. & M. 703; *Bush* v. *Cooper*, 26 Miss. 611; *Talbert* v. *Melton*, 9 S. & M. 27; *Bruner* v. *Sherley*, 27 Miss. 407; *Reed* v. *Bullington*, 49 Miss. 223. (2.) No essential change, so far as this matter is concerned, has been made by the act of 1867. (3.) Accordingly, it has been held by courts whose decisions are entitled to great consideration, that the State courts can enforce liens, although the debtor has become a bankrupt. *Marston* v. *Stickney*, 55 N. H. 383; *Cole* v. *Duncan*, 58 Ill. 176;

*Fehley* v. *Barr*, 66 Penn. St. 196; *Biddle's Appeal*, 68 Penn. St. 13; *Clark* v. *Benninger*, 3 B. R. 521; *Shannon* v. *Howell*, 40 Ga. 258; *Douglass* v. *St. Louis*, 56 Mo. 393; *Munson* v. *Boston, &c. Railroad*, 120 Mass. 81; *Ray* v. *Wight*, 119 Mass. 426; *Clifton* v. *Foster*, 3 B. R. 658; *Eyster* v. *Gaff*, 91 U. S. 521; *Reed* v. *Bullington*, 49 Miss. 223.

3. The counsel then reviewed the authorities cited by opposing counsel, and replied at length to the points made by them.

SIMRALL, C. J., delivered the opinion of the court.

The complainants framed their bill *primarily* on the theory that L. A. Winters, one of the defendants, was a debtor to them severally, by personal decrees obtained against him as guardian and as surviving executor, the decrees having been rendered in 1873; that executions on these decrees, which had been duly enrolled in the Chancery Court, had been returned *nulla bona;* that L. A. Winters had invested his money and means in the purchase of the several parcels of land sought to be subjected to the decrees, and had had the conveyances made to his wife, with the intent to hinder, delay and defraud the complainants in the recovery of their respective debts; and that the decrees were a lien on the lands. The relief prayed was that these conveyances might be set aside, and the property sold to satisfy the debts. There was also a prayer for general relief.

The complainants have misconceived their rights in supposing that their decrees are liens on the lands alleged to have been fraudulently conveyed. This is so, whether the decrees were properly enrolled or not, — a point on which much argument has been expended. The several conveyances alleged to be fraudulent were not made by the debtor, L. A. Winters. The title to the property was not in him at all. It may be true, therefore, that his money paid for the land; yet, as he was not a fraudulent grantor, the case does not come within the Statute of Frauds. But because his means were thus invested, a court of equity would pursue them for the benefit of creditors, not upon any idea that the decrees were liens on the land, but because it was a shift and device to hide and

conceal his means from his creditors.   The grantees under the deeds would be esteemed as trustees for the creditors.   *Carlisle* v. *Tindall*, 49 Miss. 229, 232–235.   Under the prayer for general relief such redress may be afforded as would be warranted by the case stated in the bill, if sustained at the final hearing.

The defendants pleaded, in abatement of the suit, that before its institution, on Jan. 20, 1874, L. A. Winters was adjudged a bankrupt, and held his protection certificate, and therefore pray judgment whether it behooves them to make any other or further answer thereto.   This plea was demurred to on various grounds.   Those chiefly relied upon are, " that no adjudication of the bankrupt court can protect or discharge L. A. Winters from the liabilities charged in the bill; " and " because the rights of the complainants and the liabilities of the defendants are not within the act of Congress, or the jurisdiction of the bankrupt court."   Subsequently, in their answers, the defendants relied upon the final discharge of L. A. Winters, which was filed as evidence in the cause.   The discharge was dated March 25, 1875.   The bill was filed Aug. 10, 1874.

What effect do these proceedings in bankruptcy have on this suit?   The complainants claim that their debts are of a fiduciary character, and that the protection certificate and final discharge do not absolve their debtor ; and that, having liens on the real estate, they may pursue their remedy in the State court.   They refer to *Reed* v. *Bullington*, 49 Miss. 223, and cases there cited, for authority so to do.   That case holds that a judgment lien acquired before an adjudication of bankruptcy is protected in its advantages and privileges by the bankrupt law of 1867, and that the creditor may proceed to satisfaction in the State court.   But, as already remarked, these creditors have *no lien* on the lands.   The exact extent of their equity is to subject this property, because embodied in it, so to speak, is the money of their debtor.   That interest is not vendible on execution.   But for that reason a court of equity, after an exhaustion of legal remedy, applies it as equitable assets to the creditor's demand.

A debtor cannot invest in property for the benefit of his

wife and children, or either, to the prejudice of his creditors. Such purchases are advancements merely, and, being voluntary, are fraudulent as to existing creditors.

We are satisfied from the testimony that such was the character of the several conveyances vesting the property in. Mrs. Winters, and, under our law, would be void as to existing creditors; and such were the complainants. The thirty-third section of the bankrupt law, among other things, declares "That no debt created . . . while acting in any fiduciary character shall be discharged" by proceedings in bankruptcy; "but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." These creditors, although their respective debts were unabsolved by the discharge, could share in the assets of the bankrupt. It becomes important, therefore, to ascertain what property, or interests in property, passed to Winters's assignee. He was declared a bankrupt Jan. 20, 1874, as averred in the plea.

Under the bankrupt law, all interests in property which are valuable to creditors pass to the assignee, who takes such interests for the creditors, and may invoke any remedy which they might employ, but for the bankruptcy, to convert such interests into money. The remedy extends to property fraudulently conveyed, and to fraudulent investments in the name of another. If the bankrupt fraudulently invests in stocks, after the commencement of proceedings in bankruptcy, money which he had before, the assignee may recover it. Bump on Bankruptcy, 553. Surely he could recover in like circumstances where the purchase was made before such proceedings were begun. We have no doubt, therefore, that the right to reach and subject the property embraced in these conveyances was as fully in the assignee as it was in existing creditors, if there had been no bankruptcy.

This reduces the matter to this proposition, as to the property and interests in property vested in L. A. Winters's assignee, as of Jan. 20, 1874, several months before this bill was filed: Can these complainants, because they were fiduciary creditors pending the bankruptcy proceedings, appropriate this property to themselves exclusively? The other creditors existing at the time of the conveyances were equally entitled to share with

them. If the Chancery Court, having no other parties before it, must appropriate the proceeds of the property to pay the complainants' claims, although there may be other creditors equally entitled with themselves to share in the fund, that would break in upon the prominent feature of the bankrupt law; namely, an equal distribution of the bankrupt's estate among all the creditors.

The fiduciary creditor stands on the same footing with other creditors, except that he is unaffected by the discharge. He may prove his debt and share in the distribution, but has no exclusive or superior advantages in the assets over other creditors. It is quite evident that an ordinary creditor cannot sue in the State court, pending bankrupt proceedings, and have a decree appropriating property fraudulently conveyed, or in which the bankrupt has made a fraudulent investment, exclusively to his debt. As we have seen, such rights and interests vest in the assignee for the creditors, and the assignee is a necessary party in that suit, — necessary, because the fund ought to go into his hands for distribution.

In *Eyster* v. *Gaff*, 91 U. S. 521, the mortgagee had brought his bill against the mortgagor to foreclose *before* the latter was adjudged a bankrupt; and it was held that the State court was not ousted of jurisdiction by the subsequent bankruptcy, but might decree between the parties, unless the assignee came in and was made a party. He acquired title by assignment *pendente lite*, and was subject to the operation of that principle.

We do not think that the bankruptcy of L. A. Winters necessarily drew to the District Court of the United States all contestations about his estate. A mortgage might have been foreclosed in the State court. So the assignee might have sued in that court to subject this real estate for creditors; or, if he had declined, perhaps creditors entitled to share in the fund might have made him a defendant.

The principle which lies at the foundation of this suit, and stands as an insuperable obstacle in the way of relief to the complainants, is, that they have no lien on the lands out of which they seek satisfaction of the decrees. We have thought it sufficient to demonstrate, by reference to the allegations of

the bill, that the title never was in L. A. Winters, who therefore was not a fraudulent grantor within the Statute of Frauds; and that, for that reason, there could be no legal lien; and have not thought it necessary to consider whether the enrolment of the decree in the Chancery Court was a compliance with the statute regulating enrolments of judgments and decrees. Neither have the complainants a lien in equity on the lands, treating them as equitable assets only to be reached in chancery. They have performed one of the conditions upon which that court interposes; viz., the establishment of their debts by decrees, and the return of *nihil* on final process. The lien in equity attaches on filing the bill.

But the complainants did not institute this suit until several months after L. A. Winters, their debtor, had been adjudged a bankrupt. It will hardly be contended that a creditor can obtain an equitable lien on the property interests of the bankrupt, by a suit brought after he has been declared a bankrupt. The bankrupt law preserves only those liens which existed before and at the time of the bankruptcy. The only suit that can be rightfully brought by a creditor after that occurs, is to enforce a pre-existing lien, as a lien by mortgage or judgment. To grant relief on this theory would be to allow the creditors of the bankrupt, without lien, legal or equitable, at the date of the bankruptcy, to acquire an equitable lien by suit in chancery, which would give them an advantage over other creditors not intended by the bankrupt law, and in contravention of its whole policy. After bankruptcy has been declared, creditors without the privities and privileges of antecedent liens are confined to the bankrupt court for the proof of their debts, and also for satisfaction.

To demur to a plea is an unwarrantable innovation in chancery practice. The mode of testing the sufficiency of the plea in law was to set it down for hearing. The demurrer, though irregular, had the effect of obtaining the opinion of the court on the plea. The plea presented the question whether, on account of the bankruptcy of L. A. Winters, the court would further take cognizance of the case.

If the foregoing reasoning is sound, it leads to the conclu-

sion that the complainants could not be relieved, as specially prayed, nor are they entitled to any other relief on the case made by the pleadings and proof.

*Decree reversed and bill dismissed.*