# Glasser, Kuder & Ottensosser v. Meyrovitz.

*Bill in Equity to Avoid Collusive and Fraudulent Attachment, and for Accounting.*

1. *Appeal not authorized from a decree overruling a demurrer to a plea in equity.*—The statute authorizes an appeal from an interlocutory decree, sustaining or overruling a plea in equity, but not from the sustaining or overruling a demurrer to such plea. It is only from decrees upon demurrers to a bill in equity, or upon a motion to dismiss a bill for want of equity, that an appeal is authorized. (Code, 1886, §427.)

2. *Demurrer to plea in equity not proper practice; set down for hearing.*—By the regular course of practice in courts of chan-

[Glaser, Kuder & Ottensosser v. Meyrovitz.]

cery, demurrers to pleas are unknown, and are never resorted to to settle the validity of a plea or an answer. If the legal sufficiency of a plea is denied, it is set down for hearing, the setting it down for hearing operating as an admission of all the facts contained in the plea.

3. *Res adjudicata.*—The judgment of a court of competent jurisdiction, rendered on the merits, as between the parties, is final and conclusive of the matter in controversy, so long as it remains unreversed. The principle applies alike to the decrees of a court of chancery, the judgments of courts of law, and the sentence of all tribunals of competent jurisdiction.

4. *Res adjudicata; elements essential; plea.*—To support a plea of *res adjudicata*, the parties must be the same, the subject matter the same, the point must be directly in question, and the judgment must be rendered on that point; the point in question must either have been actually decided, or necessarily involved in the first case, and the judgment or decree rendered on the merits of the case, and so much of the proceedings in the former suit as necessary to show these facts, must be set up in the plea.

5. *Res adjudicata; bill to declare general assignment no bar to another to declare transaction fraudulent.*—A bill in equity to declare attachments procured by a debtor and levied upon his property, a general assignment for the benefit of all his creditors and to have the property sold and equitably divided among all his creditors, is no bar to another bill by the same parties, setting up the same facts, and seeking an accounting of the proceeds of the property on the ground that the attachments were "suits commenced" with the intent to hinder, delay or defraud creditors, avoided by the statute of frauds. (Code, 1896, §2156.)

6. *Estoppel; does not arise by failure to prevent the consummation of the fraud.*—Creditors injured by attachment proceedings, instituted by other creditors in collusion with the debtor, are not estopped from bringing their bill to require an accounting for the proceeds of the property, because the bill was not filed before the fraud was consummated by judgment and sale of the property under the attachment proceedings.

APPEAL from Barbour Chancery Court.

Tried before Hon. JERE N. WILLIAMS.

The case is stated in the opinion.

A. H. MERRILL and S. H. DENT, Jr., for appellants, cited, *Globe Iron Roofing Co. v. Thatcher,* 87 Ala. 458; *Moog v. Talcot,* 72 Ala. 210; *Shields v. Barrow,* 58 U. S. (7 How.) 130; Black on Judgments, 618, 730; *Elgin Watch Co. v. Meyer,* 29 Fed. Rep. 225; *Bell v. Goet-*

*ter, Weil & Co.,* 106 Ala. 462; *Comer v. Heidelbeck,* 19 So. 719; *Cartwright v. Bamberger,* 90 Ala. 405; *Dickinson v. Nat. Bank of Republic,* 98 Ala. 546.

G. L. COMER, *contra,* cited, *Strickland v. Gay, Hardie & Co.,* 104 Ala. 375, 378-9; 3 Brick. Dig. 583, § 115; *Strong v. Moog,* 72 Ala. 460; *Tankersly v. Pettis,* 71 Ala. 179.

BRICKELL, C. J.—The bill was filed on November 11, 1895, by appellants, creditors of J. Meyrovitz, and sought to compel an accounting by defendants, certain other creditors of said J. Meyrovitz, for the value of a stock of goods, which had been levied on and sold as the property of Meyrovitz, under writs of attachment sued out by defendants with his consent and collusion for the purpose of hindering, delaying and defrauding complainants and other creditors. The defendants, as is permissible under the statute (Code of 1896, § 699), incorporated in their answer two pleas, the first intended as a plea of *res adjudicata,* alleging that on November 19, 1894, the complainants filed a bill against defendants, "in which the same facts were set up as are now set up in this bill," and in which they prayed for an injunction and the appointment of a receiver, and that the attachments procured with the consent of Meyrovitz be declared a general assignment, inuring to the equal benefit of all his creditors, and that upon the hearing of said cause a decree was rendered dismissing the bill, which is unreversed and of full force. The second plea asserts that complainants are estopped to maintain this suit, by reason of the fact that, with knowledge that said attachment proceedings were pending in the circuit court, they permitted the same to be prosecuted to judgment, the property to be sold and the proceeds distributed, without taking any steps to prevent it. To these pleas, the complainants demurred, assigning causes all of which are directed to the sufficiency of the pleas. The demurrers were overruled, thereby adjudging the sufficiency of the pleas, and from the decree the appeal is taken.

The statute authorizes an appeal from an interlocutory decree, sustaining or overruling a plea to a bill in

equity, but not from the sustaining or overruling a demurrer to such plea. It is only from decrees sustaining or overruling a demurrer to a bill in equity, or a motion to dismiss a bill for want of equity, that an appeal is authorized. (Code of 1896, § 427.) The statute is adapted to and meets the regular course of the practice in courts in chancery, in which demurrers to pleas are unknown. If the legal sufficiency of a plea is denied, it is set down for a hearing, the setting of it down operating as an admission of the truth of all facts contained. in the plea.—1 Dan. Ch. Pl. & Pr. (6th Ed.), 562-693. In *Winters v. Claitor,* 54 Miss. 350, it was very properly said by Simrall, C. J.: "A demurrer to a plea is an unwarrantable innovation in chancery practice. The mode of testing the sufficiency of the plea in law was to set it down for hearing." In *Travers v. Ross,* 14 N. J. Eq. 258, it was said by the chancellor: "In equity, a demurrer is only a mode of defense to the bill. *It is never resorted to* to settle the validity of a plea or an answer. Such a method of proceeding is not recognized in the books." This is the unvarying teaching of the text-books and of the courts. While departures from the practice are to be reprobated, pursuing the course taken in *Winters v. Claitor, supra,* and in *Klepper v. Powell,* 6 Heiskell (Tenn.), 506, as there was no objection made in the court below, and the demurrer had the effect of obtaining the judgment of the court on the sufficiency of the plea, we will entertain the appeal, remarking that it is better and safer to observe the settled mode of practice and the regular course of practice.

In relation to the first plea. Of a plea of *res adjudicata,* it is said, 1 Dan. Ch. Pl. & Pr. 661, that "as a plea of this kind proceeds upon the ground that the same matter was in issue in the former suit, and as every plea that is set up as a bar must be *ad idem,* the plea should set forth so much of the former bill and answer, as will suffice to show that the same point was then in issue, and should aver that the allegations as to the title to relief were the same in the second bill as the first." Testing the plea by this well settled principle, it is obviously insufficient. Passing over the fact that there are several parties complainant to the present bill, who were not parties, or, so far as appears, privies to the former suit, and not affected by the decree therein, the

relief prayed in the former suit, was, that the acts of the defendant "Meyrovitz be declared a general assignment for the benefit of all the creditors of said Meyrovitz, and that said goods be sold and the proceeds thereof distributed equitably among all the creditors of said Meyrovitz." This was the relief prayed, and construing the plea most strongly against the pleader, the intendment must be that it was the only relief prayed, and that the allegations of the former bill were adapted to that relief.

Proceeding upon this hypothesis, it is apparent the matters of controversy, and the facts now in issue, were not involved in the former suit, and were not and could not therein have been adjudicated. The facts now pleaded, as constituting the fraud upon which a vacation of the attachments is prayed, may have been in the former suit, to follow the plea, "set up as they are now set up in this bill," but they were not made, and could not consistently with the prayer of the bill have been "set up" as the ground of relief. If any other construction of the plea were adopted, the bill in the former suit must have been filed in a *double* aspect—in one aspect alleging the attachments were fraudulent—in the other, alleging that they were levied upon all or substantially all of the property of the debtor, subject to the payment of debts, yet, praying relief only in the latter aspect. That a bill may not be filed in such double aspect, is not controverted, and is well settled. The real point now in issue—the substantial matter of controversy, is, whether the attachments are "suits commenced," with the intent to hinder, delay, or defraud creditors, avoided by the statute of frauds. (Code, 1896, § 2156.)

No principle of law is better settled, than that the judgment of a court of competent jurisdiction, rendered on the merits, as between the parties, is final and conclusive of the matter in controversy, so long as it remains unreversed. And the principle applies alike to the decrees of the court of chancery, the judgments of courts of law, and the sentence of all tribunals of competent jurisdiction. "When there is no question as to the jurisdiction of the court, or as to the identity of the parties, the inquiry, whether the subject-matter of the controversy has been drawn in question, and is concluded by a former adjudication, is determined, when

it is ascertained that the matters of the two suits are the same, and the issues and the former suit were broad enough to have comprehended all that is involved in the issues in the second suit.  The inquiry is not, what the parties actually litigated, but what they might and ought to have litigated in the former suit."—*Tankersly v. Pettis,* 71 Ala. 186.

But to support a plea of *res adjudicata,* as was said by Stone, J., in *Gillbreath v. Jones,* 66 Ala. 132, "The parties must be the same, the subject-matter the same, the point must be directly in question, and the judgment must be rendered upon that point." In *McCall v. Jones,* 72 Ala. 371, it was said: "It is not only essential that the issue, or point in question, must either have been *actually decided,* or *necessarily involved* in the first case, but the first judgment, sought to be pleaded in bar of the second suit, will not be available as a defense, unless it was a judgment on *the merits of the case.*" These are elementary principles, embodied in the unvarying language of text-writers and judicial tribunals.  Applying them to the plea, we repeat, it is rather negatived, than shown affirmatively, that the point now in issue, the invalidity of the attachments as frauds upon creditors, was, or could have been litigated, or adjudged in the former suit.

The plea of estoppel is founded upon the failure of complainants to take any action to prevent the prosecution of the attachment suits to judgment, and the sale of the property and distribution of the proceeds, and is equally bad.  No duty rested on the complainants to take any such action, and where there is no duty to act the failure to act can not raise an estoppel.  The defendants, under the averments of the bill, were knowingly guilty of a legal fraud and a violation of the law, in instituting the attachment suits through collusion with their debtor, and upon them, not upon complainants, rested the duty of preventing the consummation of the fraud.  The law offers no such shield to protect one, guilty of the fraudulent conversion or misappropriation of property, in the enjoyment of the proceeds of the fraud.  The court erred in sustaining the pleas, and the decree must be reversed, and a decree rendered overruling the pleas, and remanding the cause.