48   101
72   831

## T. H. & J. M. ALLEN & Co. v. F. A. MONTGOMERY et ux.

1. CHANCERY—EQUITABLE ASSETS—CREDITOR AT LARGE.—A creditor at large cannot, in a court of chancery, reach equitable assets of his debtor, nor can he assail a conveyance of the debtor's property fraudulently made.

2. CHANCERY—LIEN—ADVANCES BY MERCHANT.—The advance by a cotton factor or commission merchant of money and supplies to a planter to facilitate the production of a cotton crop, upon an express parol agreement that the cotton grown shall be shipped to the merchant to discharge the debt thus created, does not create a lien upon the cotton in favor of the merchant.

3. CHANCERY—ATTACHMENT.—The only conditions upon which an attachment in chancery may be sued out are, the absence of the debtor from the state, or his absconding and the presence here of effects belonging to, or a debt due, him, or that he owns lands and tenements here.

4. BANKRUPTCY—PROPERTY FRAUDULENTLY CONVEYED.—Property conveyed by a bankrupt in fraud of his creditors, becomes vested by operation of law in his assignee for the benefit of his creditors, and he alone has the right to reach and subject it to the payment of debts.

5. SAME—FRAUDULENT CONVEYANCES.—The fraudulent conveyances referred to in the 14th section of the bankrupt act are such as are fraudulent at the common law, or such as are so denounced by state statutes, as distinguished from those in fraud of the act itself.

6. SAME—JURISDICTION—STATE COURTS.—Creditors cannot, in a state court, pending the administration of an insolvent's estate in a bankrupt court, appropriate property fraudulently conveyed by the bankrupt, exclusively to their debts.

7. SAME—EFFECT ON PENDING SUITS IN STATE COURTS.—The effect of bankruptcy on suits pending in the state courts is to stay or suspend them. The plaintiffs in such suits may, with the leave of the bankrupt court, prosecute them to judgment, but with the single purpose of determining the amount due.

8. SAME—SEIZURE UNDER EXECUTION BEFORE—POWER OF CREDITOR.—If there has been a recovery of judgment before bankruptcy, and a seizure of property under it, the sheriff may go on and sell; but if it become convenient and necessary in order to adjust the rights and equities of creditors, the bankrupt court may, even in such case, cause the sale to be made under its supervision and control.

9. SAME—JUDGMENT AFTER FINAL PROCESS.—Final process cannot be issued by state court, or executed for the satisfaction of a judgment rendered against the assignee of debtor in a suit pending at the time of his bankruptcy.

APPEAL from the chancery court of Bolivar county. HARMAN, Chancellor.

On the 11th day of March, 1868, the appellants filed their bill in the court below, alleging that F. A. Montgomery owed them the following debts: A promissory note for $4,760.80, dated May 16, 1861, and due nine months after date; another note for $968.30, dated September 1, 1865, and due January 1, 1867, and an open account for plantation supplies furnished during the year 1866. That these supplies were furnished upon the parol agreement that said Montgomery would ship to them all the cotton he might raise during said last named year to pay for the supplies furnished; that he only shipped to them twenty-nine bales of cotton, and disposed of the remainder to other persons in fraud of their rights; that on the 25th of October, 1866, said Montgomery executed and delivered to Trimble and Lightfoot a trust deed on certain lands designated in Bolivar county, Mississippi, to secure a promissory note for $1,500; that said trustees, on the 4th day of February, 1867, sold said lands to secure and satisfy a balance due the trust creditor of $378; that Charlotte Montgomery, wife of said F. A. Montgomery, became the purchaser for the exact amount purporting to be due the trust creditor, and received a deed from the trustees; that this sale and purchase was the result of

a fraudulent collusion between the husband and wife to defeat the appellants in the collection of their debts; that the purchase of the land was, in fact, made with the money of the husband; that said F. A. Montgomery was insolvent at the time, and had taken, or prepared to take, the benefit of the bankrupt act, and thus, by fraud, secure to his use the lands so sold, in addition to such exemptions as he might be allowed by said act; that the money was placed by said Montgomery in the hands of his wife to make the purchase, and had concealed his effects to avoid the payment of his debts.

Charlotte Montgomery, defending separately, on the 26th April, 1869, filed a demurrer, which was overruled; and in November, 1869, she filed her answer, in which she alleges: That the trust debt secured by the deed to Trimble and Lightfoot was not paid in whole or in part, but that she had given the beneficiary in the deed her note for the whole amount; that she had paid the note with her own means; that her husband was a discharged bankrupt; that there was no fraud or combination, and that the whole transaction connected with the sale and purchase of the land was *bona fide*, and that her own separate means were used in the payment of the purchase money of the land.

F. A. Montgomery pleaded his discharge in bankruptcy, from which it appears that he was adjudicated a bankrupt on the 28th day of February, 1868, and discharged on the 7th day of July, 1869.

The deposition of F. A. Montgomery, taken in the cause, shows, that he gave to his wife, of the cotton grown by him during the year 1866, with the assistance of the supplies and money advanced by the appellants, twenty-seven bales, in payment of a debt which he owed her, and that with this cotton she had purchased the debt secured by the trust deed to Trimble

and Lightfoot; that the debt to his wife grew out of her support during the war, and while witness was absent in the army, of the family of witness, and advances made to him by her; that the money with which this was done was made by his wife, solely, without any assistance from him, and entirely with her own means and upon her credit.

These are all the facts important to a fair understanding of the case.

*Nugent & Yerger,* for appellants,

Contended, that the state court had concurrent jurisdiction of the case; that the bankruptcy of Montgomery took the case out of the ordinary rule, which prohibits any but a judgment creditor from impeaching a fraudulent conveyance, for the simple reason that the appellants could not, under the law, obtain judgment against Montgomery, an adjudicated bankrupt, and no court could require an impossibility before it would open its door to a litigant; that this would be a denial of justice at the outset; that the appellants were entitled to the cotton delivered by Montgomery to his wife, under the agreement entered into when the advances were made; that they had an equitable lien upon this cotton; that the cotton really belonged to Montgomery, and its disposition by him in favor of his wife was fraudulent, and would, even in chancery, authorize the issuance of an attachment, upon the principle that equity follows the law; and that this cotton, having been used to purchase the land, the land itself was bound for the payment of the complainants' debt. They cited, in support of their argument, the following authorities: Cole v. Duncan, 3 Ch. N. 233; *In re* Campbell, 1 Law Times, 30; 2 Kent Com. 157, 158, 162; 27 Miss. 830; 32 ib. 278; 6 S. & M. 647; 26 Miss. 134; 25 ib. 471; 27 ib. 167.

*Johnston & Johnston*, for appellees.

The bankrupt court had exclusive jurisdiction of the matters involved in this cause. Const. U. S. art. 1, § 8; Bankrupt Act of 1867, § 1.   If this were not the case, the bill as framed could not have been sustained.   The complainants were creditors at large without a judgment at law, and the bill on its face shows that Montgomery was largely indebted to other persons.   Berryman v. Sullivan, 13 S. & M. 65; Farned v. Harris, 11 S. & M. 366; Vasser v. Henderson, 40 Miss. 519; Story Eq. Jur., §§ 547, 548, 549, 550.

The husband had a perfect right to give to his wife the fruits of her personal labor, and the title acquired by Mrs. Montgomery to the property held by Trimble and Lightfoot was paramount.   Rev. Code of 1857, p. 335, art. 23.

*F. A. Montgomery*, on same side,

Filed a written argument on the merits of the case, which it is not proper to insert, as the court did not pass upon the facts.

*Clark & Montgomery*, on same side,

Made the following points in their brief:

1. Complainants were not lien creditors.   Berryman v. Sullivan, 13 S. & M. 65; Brown Bros. & Co. v. Bank of Mississippi, 31 Miss. 458, and "cases too numerous to cite."

2. Attachments in chancery court cannot be issued except against absent, absconding or non-resident debtors.   If the allegation of fraud be true, it may have been proved for attachment at law, but not in chancery. Rev. Code, 1857, p. 549.

3. The only remedy of the complainants was in the district court of the United States in bankruptcy.   2 Story, 159.

SIMRALL, J. :

The appellants, creditors of F. A. Montgomery, seek to set aside a sale and conveyance, made by Trimble and Lightfoot, of a tract of land mentioned in the pleadings, to Mrs. Montgomery, on the averment that the property is subject to their debt, and that the means by which it passed from her husband to the trustees, and especially from the latter to her, were fraudulent contrivances and arrangements to defeat the complainants of their debt.

F. A. Montgomery was indebted to the complainants, cotton factors and commission merchants, a balance before the war in 1860 and 1861. After the war, in 1866, the business connection was renewed ; the complainants advancing to Montgomery money and supplies in aid of his planting operations. At the close of the year's business, Montgomery was left in debt between $3,000 and $4,000.

The object of the suit was to hold the property which had been sold and conveyed by the trustees to Mrs. Montgomery, responsible for F. A. Montgomery's debts. The complainants aver, that by the execution of the deed of trust for the benefit of Jones, and the sale under it to Mrs. Montgomery, F. A. Montgomery attempted to give an unfair preference to a creditor over others. The bill also alleged that Mr. Montgomery had been declared a bankrupt, or had already been discharged as such.

A demurrer by Mrs. Montgomery was overruled. The case went to final hearing on her answer, a plea by Montgomery of his bankruptcy, and the proofs. The bill was dismissed.

Does the bill state a case, entitling the complainants to the relief sought, or to any relief ?

It is quite well settled that a creditor at large cannot reach in a court of equity, equitable assets of his

debtor, nor can he assail a conveyance of his property, fraudently made as to him.   In either case, the court administers relief in aid of the court of law or its judgment.   In the former case, it is only after legal remedy has been exhausted, as by a return of *nulla bona*, that the equity court takes hold of equitable assets, and applies them to pay the judgment.   In the latter, it displaces the fraudulent conveyance, so to make bare and plain and sure satisfaction out of the property.   12 S. & M. 547 ;  10 ib. 556 ;  13 ib. 65 ;  Fowler v. McCartney, 27 Miss. 509 ;  Vasser v. Henderson, 40 ib. 519.

The complainants had not recovered judgment against F. A. Montgomery, and had, therefore, no standing in court to controvert the acquisition of the title to the property as fraudulent and void against them, unless they had some equity against it, by reason whereof they were entitled to satisfaction of their debt out of it.

The appellants urge an equity more specious than real.   It is, that they made advances' to enable F. A. Montgomery to make the crop of 1866, on the contract or assurance that the cotton should be consigned to them on sale, and out of the proceeds they should be re-imbursed; that twenty-seven bales were diverted from them and turned over to Mrs. Montgomery, which she used in procuring an assignment to herself of the trust debt to Jones, and by means of which she bought in the property at the trustees' sale.   Thus, it is urged, the property or fund pledged to the appellants for their debt by F. A. Montgomery is traced into the land, and their right to subject that is as' clear as if no such conversion had been made. We, however, are able to see nothing more in the transactions between T. H. & J. M. Allen & Co., and F. A. Montgomery, than the ordinary business between the commission merchant and planter ; the former supplying to the latter money or other means

to aid in the production of the crop, on the understanding, express or implied, that it shall be sent to him for sale, to re-imburse his outlays, commissions and interest. The inducement to the factor to make the advances are the commissions and interest. It is not claimed that a lien arises on account of the advances, but if we understand the argument for appellants, it is because of the pledge to ship the crop to them for sale and re-imbursement. Such advances in this state have never been considered as creating a lien until specially provided for in the statute of 1867. It is not pretended that complainants have complied with that statute.

In this view of the appellants' demand they were creditors at large without any equity, lien or charge upon the cotton crop of 1866, or the land into which a portion of the cotton was converted. This sweeps away their right to proceed in chancery against the property.

But we think the bankruptcy of the debtor, F. A. Montgomery, presented an insurmountable obstacle in the complainants' path.

The bill was filed the 11th March A. D. 1868. The averment is, that F. A. Montgomery is hopelessly involved and fraudulently purposes and intends taking, or has already taken, the benefit of the bankrupt law, without surrendering the land sold to his wife, etc. On the 29th February A. D. 1868, Montgomery filed his petition in the bankrupt court, was declared a bankrupt on the 23d March, 1868, and was discharged as such on the 7th day of July, 1869.

The intent and purposes of the bankrupt law is, that the property of the debtor (except as exempted thereby), at the time of filing the petition in bankruptcy, shall vest in the assignee. The fourteenth section, after using the general words "personal and real estate," includes in the specific enumeration of which shall pass to the assignee "all property con-

veyed by the bankrupt in fraud of his creditors." The assignment relates back to the date of the application, and as of that day denudes the bankrupt of all his estate, real and personal, choses in action, except exemptions and property held in trust, or beneficially belonging to others.

Whatever right there may have been in the creditors of Montgomery to subject the lands alleged to have been fraudulently conveyed to the wife, that right inured to the assignee for their benefit.

The policy of the law is to administer the assets, upon the principle of equality, for creditors, except that those who have acquired privileges and liens, anterior to bankruptcy, shall have the full benefit of them.

These complainants, when they filed their bill, had no advantage of that sort. They had no preference as to the lands over other creditors. It would overturn the leading idea and principle of the bankrupt law to allow them in the state court, pending the administration of the insolvent's estate in bankrupt court, to appropriate this property exclusively to their debt. In reality, Montgomery, in this suit, is a mere nominal party; the assignee has absorbed all of his rights, property and claims, and yet the effort was as against the real party, in his absence from the suit, to obtain a decree which would conclude his right. If Mrs. Montgomery has acquired the property in fraud of the creditors, if not within the letter, surely within the spirit and equity of the fourteenth section of the bankrupt law, the property vested in the assignee for the benefit of creditors, and he has the same remedies that they would have had (had there been no bankrupt proceedings) to reach and subject it. The "fraudulent conveyances" meant by the act, as it has been frequently held, are those which are void at common law, or such as are denounced by the state statutes,

as distinguished from conveyances in fraud of the bankrupt law.

The effect of bankruptcy, on suits pending in the state courts, is to stay or suspend them. They may, with the leave of the bankrupt court, be prosecuted to judgments for the single purpose, however, of determining the amount due. Final process to procure satisfaction cannot be issued and executed. To permit it, would involve the collection and conversion of the assets into money by the assignee and their distribution in inextricable confusion. If the suit of the creditor proceed to judgment on the suggestion of bankruptcy, the debtor must retire and the assignee be brought in as defendant in his place.

If there has been the recovery of judgment before bankruptcy, and a seizure of property under it, it has been held that the sheriff may go on and sell. This, upon the idea that the creditor has a prior right over other creditors, and the levy makes an inceptive transfer to the sheriff, which the sale completes. But in such case, the bankrupt court, in virtue of its general cognizance over all the parties and the subjects, if it became convenient and necessary, in order to adjust the rights and equities of creditors, could cause the sale to be made under its supervision and control. Sharman v. Howell, 40 Ga. 258. In this suit there was no dispute as to the amount due the complainant. Nor was there a right in their favor against the property, superior and exclusive of other creditors.

Nor is the complainants' case improved by the attachment. A relief by attachment in chancery has grown up under the statute. Article 60, p. 549, Code of 1857. Its conditions are : " The absence of the debtor from this state, or his absconding ; the presence here of effects belonging to or a debt due to him ; or that he owns lands and tenements in this state." Trotter v. White, 10 S. & M. 612 ; Truman v. Gwin, ib. 60 ;

Scruggs v. Blair, 44 Miss. 406; Statham v. N. Y. L. Insurance Co., 45 ib. 593. Montgomery is neither a non-resident nor absconding debtor, but resident in this state and was served with process.

The views which we entertain and have expressed of this case relieve us of the duty of considering the quality of the conveyance by the trustees to Mrs. Montgomery, and of the trust deed for J. Jones' benefit, whether fraudulent or not against the complainants.

Nor are we inclined to remand the cause as asked by counsel for appellees, if we should be of opinion that the assignee is a necessary party, in order that he might be made such in the chancery court.

The district court of the United States sitting in bankruptcy has full and complete jurisdiction to administer the estate of the bankrupt. if the property pursued by the complainants in this suit may be subjected for the creditors, that court, which draws to it all the funds and has before it all the creditors, can mete out full redress, whatever doubt there may be as to the jurisdiction of the state court, at the suit of the assignee alone or with the creditors, to set aside a fraudulent disposition of property by the bankrupt debtor (and many cases deny the jurisdiction). Bump. on Bankruptcy, p. 342, cases cited. There is no doubt of the cognizance of the federal tribunal over the subject.

We are of opinion that there was no error in dismissing the bill, wherefore the decree is affirmed.