J. C. STRONG, ASSIGNEE, *v.* H. F. KREBS, ASSIGNEE, ET AL.

CHANCERY. *Breach of contract. Remedy at law. Assignment preferring creditors.*

    D. leased M. a saw-mill site and made advances to him to run the mill to be erected thereon. M. agreed to buy logs from D., and to sell him all the lumber manufactured at the mill. M. became insolvent and assigned his saw-mill, lease of the mill site, logs received from D., and lumber on hand to K. for the benefit of other creditors than D., and without having paid his indebtedness to the latter. D. filed a bill in chancery to have the property so assigned to K. subjected to the payment of his debt. *Held*, that D. has no lien on the property, nor is there a fiduciary relation between the parties. The case presents simply a breach of contract, which can be amply compensated for by an action at law; and, in contemplation of law, the assignment is not fraudulent because it prefers certain creditors to the exclusion of D.

APPEAL from the Chancery Court of Jackson County.

HON. SYLVANUS EVANS, Chancellor.

A. C. Danner & Co. entered into a certain agreement in writing with Mead Bros., and afterward Danner & Co. sold all their interests, including their rights under this agreement with Mead Bros., to the "Danner Land and Lumber Company." A. C. Danner & Co. had exhibited a bill against Mead Bros. The Danner Land and Lumber Company having failed, J. C. Strong, the assignee of the same, was made complainant in place of Danner & Co. The bill set out that Danner & Co. had entered into an agreement with Mead Bros., whereby the latter leased from the former a certain mill site for five years, and agreed to erect thereon a saw-mill; that they agreed to purchase from Danner & Co. such merchantable saw logs as might be tendered them, not exceeding a certain quantity, with the option of cutting their own saw logs from the land of Danner & Co. at a fixed rate; that it was agreed that all lumber manufactured at this mill should be sold *only* to Danner & Co.

at the prices and upon the conditions fixed in the contract; that the Mead Bros. agreed that they would not sell any of this lumber to any one else except upon the written consent of Danner & Co., and that they would not underlet or surrender possession of the premises or any part thereof during their term; that they, the Mead Bros., at the expiration of their lease, might remove their mill, fixtures, and machinery, leaving the site in the same condition as they found it; that after ten days' notice of any breach of the contract by the Mead Bros., Danner & Co. might enter and take possession of the property leased. The bill further states that Danner & Co. performed their part of the contract, but that the Mead Bros., long before their term expired, made an assignment of their lease and a large lot of personal property, including the saw-mill and fixtures erected in accordance with the above contract and a large lot of lumber sawed at the mill and saw logs furnished by and taken from the land of Danner & Co., in accordance with the above-described contract; that this assignment was made to H. C. Krebs for the benefit of certain preferred creditors therein mentioned, not including complainant; that Mead Bros. were indebted to Danner & Co. in a large sum on open and stated accounts, for advances made on the lumber to be sawed and in accordance with the written contract; that Krebs knew of the contract between Danner & Co. and the Mead Bros. The bill further sets out that the Mead Bros. are insolvent and cannot respond to any damages for a breach of their contract; that they paid no rent for the mill site, and that after notice given, as required by the contract, Danner & Co. demanded possession of the leased premises and all logs and lumber thereon. The bill prays an injunction to prevent H. F. Krebs, the assignee (who was made a party defendant to the bill), from disposing of the property assigned to him by the Mead Bros., and that this property be subjected to the payment of the claim of complainant. The defendants filed an answer and cross-bill, and on the hearing the bill of complainant was dismissed, and he appealed.

*L. Brame*, for the appellant.

Under the agreement, the lumber when sawed and stacked was (after seventy-five per cent. of the estimated value at the price fixed upon had been paid) to be the property of the company. The balance of the price was to be paid when the lumber was actually inspected and put on the lighters of the company; but the lumber had been more than paid for. Therefore, it did not belong to the defendants; but, disregarding the rights of the company, they attempted to embrace this lumber in an assignment which entirely excluded the company and preferred other creditors, some of whom were their Indiana friends whose debts were barred by the statute of limitations. Could anything be more unjust or inequitable?

I am unable to understand upon what ground the court refused to grant the relief asked as to this lumber. Whether this be a sale, or a lien, or an equitable mortgage, or whether we were entitled to specific performance or a decree enforcing a trust, certain it is that we were entitled to relief in some form in a court of equity. If there was not a sale so as to pass the legal title, we certainly had an equitable charge upon this property. As in many other cases, there may be difficulty in assigning this case to relief under any particular head of equity jurisdiction. But that the case is one which calls for relief is upon principle manifest to my mind. See Overton on Liens, § 29; Ib., § 38, p. 41, paragraph 4; Ib., § 205, p. 241; Bispham's Equity, §§ 165, 351, 361; 3 Pomeroy's Equity, § 1237; *Johnson* v. *Brooks*, 93 N. Y. 337; *Hansett* v. *Harrison*, 105 U. S., 401.

*L. Brame* also made an oral argument.

*Seal & Bloomfield*, for the appellees.

The Danner Land and Lumber Company had no lien on the lumber or other property conveyed.

The deed of assignment to Krebs is legal. It is not attacked by appellants.

Appellants' claim is on an open account, and they are not entitled to preference over other creditors.

CAMPBELL, J., delivered the opinion of the court.

The only·idea on which this bill could be maintained is, that there was a trust between the· parties to the contract set forth by it, but we fail to discover any such fiduciary relation springing from the contract as to enable a court of chancery to redress the wrong done by its violation. It presents the ordinary instance of a contract whose violation may be amply compensated for by damages in an action at·law, and the fact that a judgment for damages would yield no fruit because of insolvency does not change the rule.

The claim of the complainants is not stronger than that of the merchant who furnished the means to produce a crop of cotton upon the promise of the producer to ship the cotton in discharge of the debt for the means to make it, and it was held that the creditor had no equity as to the cotton which a court of chancery could specifically enforce. *Allen* v. *Montgomery,* 48 Miss. 101.

The complainants had no lien, by virtue of the contract, on the logs or sawed lumber, and, if they were owners of these things, an action at law was the appropriate remedy for recovery.

It was not in legal contemplation a fraud for Mead Bros. to make an assignment of their property, including the logs and lumber, for creditors with a preference for others than the complainants. However strong the moral claim may be of the seller of goods that they shall not be devoted to the payment of others instead of him, if he has no lien, it results from the ownership of his vendee that this may occur.

*Affirmed.*