(61 App. Div. 258.)

FIRST NAT. BANK OF BINGHAMTON v. PECK et al.

(Supreme Court, Appellate Division, Third Department.  May 8, 1901.)

1. SALES—EXECUTORY CONTRACT—NOVATION—SUBSEQUENT PURCHASERS—CONVERSION.

B. contracted to sell S. lumber, to be delivered on cars at a certain place, and S. contracted to sell the same lumber to P., after which, S. and P. went to B.'s mill, informed him of their contract of sale, and, on his stating that he had no objection to delivering the lumber "in pursuance or subject to" such contract, selected all the lumber which was applicable to the description in the original contract of sale, and marked it, "This lumber has been sold and delivered to P." P. still continued to act under the contract with S., making all payments to him, and all deliveries were made by B. on the order of S. *Held*, that since there was no abandonment of the contract between S. and P., nor assumption of mutual obligation between B. and P., the selection and marking of the lumber did not create an executed contract of sale between them, so as to perfect title in P., and thereby make a party who took possession of the lumber under a subsequent sale by B. liable in conversion.

2. SAME—DELIVERY—MANNER AND PLACE.

The selection and marking of the lumber did not operate as a delivery, under the contract between B. and S., to P. as the nominee of S., since the contract provided that delivery should be made on cars at a certain station, and delivery at any other place was not a fulfillment thereof.

Appeal from judgment on report of referee.

Action by the First National Bank of Binghamton against Newton J. Peck and others. From a judgment entered on the referee's report in favor of plaintiff, defendants appeal. Reversed.

Edward Borst, being the owner of certain logs and lumber at his mill, entered into an executory contract to sell the same to A. D. & M. S. Squires on June 18, 1892. On August 1, 1892, A. D. & M. S. Squires entered into a written contract of sale of such logs and lumber to the firm of Parkhurst, French & Beard. Subsequently, on November 26, 1892, Borst sold and turned over the possession of all such stock of logs and lumber then at his mill to these defendants. A. D. & M. S. Squires and the firm of Parkhurst, French & Beard, having both procured money from this plaintiff upon their notes, transferred to the plaintiff, as security therefor, the interest of each in such stock of logs and lumber, and also any right of action which either might have had against the defendants for converting such stock, and the plaintiff brought this action to recover the value of the stock of logs and lumber, which the defendants claimed and took under the said sale to them by Borst on November 26, 1892.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

J. H. & C. W. Stevens (H. C. Dornan and H. D. Hinman, of counsel), for appellants.

Millard & Stewart (Stephen C. Millard, of counsel), for respondent.

PARKER, P. J. It is conceded in this case that on June 18, 1892, when Borst made the contract with A. D. & M. S. Squires, he owned the logs known as the "Peck, Haskell & Cobb Bros. Stock," from which the lumber therein mentioned was to be manufactured. It is also clear, and indeed conceded, that such contract is an executory one, and that under it no title to such lumber passed from Borst to any one, except so much thereof as was delivered "on cars at Genesee Forks." Nor can it be claimed that the contract made on

August 1, 1892, between Squires and the firm of Parkhurst, French & Beard, operated to pass the title to the lumber therein mentioned from Borst to any one. Borst was not a party to that contract. Although A. D. & M. S. Squires thereby assumed to sell and turn over all the stock at Borst's mill, it is conceded that at that time they had no right to it, save such as they acquired under their contract with Borst of June 18th. Such assumption on their part could not affect Borst's title to that stock; and Beard, who had seen the contract of June 18th, must have known it. It is also clear that, unless under some contract with Borst the title to the lumber in question had passed from Borst to either A. D. & M. S. Squires or to the firm of Parkhurst, French & Beard, before it was taken by these defendants at the Borst mill on November 28, 1892, this plaintiff can have no action against them for the conversion of the same. It was then in the actual possession of Borst, and, if he then had the title thereto, this plaintiff has no right to complain that Borst transferred such possession to the defendants. The plaintiff, while it does not exactly claim that the title to this lumber was transferred from Borst by either of the written contracts above referred to, yet claims that by an arrangement made at the mill on August 2, 1892, between Squires, Beard, and Borst, such lumber was delivered to the firm of Parkhurst, French & Beard, and that the title thereupon vested in such firm. Such arrangement, as stated by Beard and as found by the referee, was substantially as follows: Beard, representing his said firm, and M. S. Squires, on August 2d, went to the Borst mill, and after Borst had been shown the contract between A. D. & M. S. Squires and Beard's firm, made the day before, Beard asked Borst if he had any objections to delivering all the lumber and logs "in pursuance or subject to" such contract; and Borst said he had not. Thereupon Beard and Squires, assisted by Borst, went through the yard and counted all the lumber therein which was sawed and applicable to the description in such contract, counted the amount thereof in each pile, numbered each pile, and marked it as follows: "This lumber has been sold and delivered to P., F. & B." This is substantially all that occurred between the parties, as claimed by the plaintiff; and the question arises, was it effectual in law to transfer the title and possession of the lumber so marked to the firm of Parkhurst, French & Beard?

There is no claim that any contract was then made between Borst and such firm. No obligation of any sort was then incurred from one to the other. Notwithstanding the phrase used in marking the piles, there is no pretense that a contract of sale was then made between Borst and Beard. So far as purchasing the lumber was concerned, Beard dealt entirely with Squires. His only purchase was under the written contract of August 1st. No abandonment of that was ever contemplated, and his firm at all times thereafter continued to act under it, and eventually performed it. The referee finds that thereafter the lumber delivered by Borst on the cars was delivered according to their orders, and that they paid for the sawing. The evidence is that all such orders were given to A. D. & M. S. Squires, and all such payments made to them. No orders were ever given,

nor payments ever made, from such firm to Borst. Thereafter, as theretofore, Borst continued to deliver the lumber upon the cars at Genesee Forks, upon the orders of Squires and in pursuance of his contract of June 18, 1892; and, if the finding of the referee is to be given any different meaning or effect, it is not sustained by the evidence in the case. It cannot, therefore, be considered that the "delivery" then spoken of was under any sale made by Borst to such firm, nor by reason of any contract on his part made with them to ever transfer his title thereto to them.

The plaintiff's claim, however, seems to be that the sale was to A. D. & M. S. Squires, and the delivery was to Beard's firm as their nominee. But when was any such contract of sale and delivery made by Borst with A. D. & M. S. Squires? Certainly nothing occurred, at the meeting above referred to, to evidence any such contract. It is clear beyond all controversy that there was never any purpose to abandon the contract of June 18th, then existing between Borst and A. D. & M. S. Squires, and substitute another in its place. Borst was still under obligation to perform that contract in all its requirements. He must saw the lumber as therein provided, and deliver it on cars at Genesee Forks, and until he did so he had no claim whatever for the $7.75 per thousand feet, nor for any part thereof. There is nowhere in that interview any language used or intimation given that A. D. & M. S. Squires would accept such marking and "delivery" as a performance on Borst's part of his contract with them. Plainly, it was not a delivery under the contract of June 18th, nor intended as such; and certainly no other contract of sale from Borst to A. D. & M. S. Squires was ever made or contemplated. The only contract, therefore, under which A. D. & M. S. Squires could ever have acquired the title to this lumber from Borst was that of June 18th; and Borst's obligation, therein assumed, to deliver all the lumber thereby sold upon the cars at Genesee Forks, for the single price therein stated, was never modified nor released. Now, whatever idea Squires and Beard may have had as to the effect of marking such piles and procuring Borst's assent to such a "delivery," it seems clear that it did not change the obligations of either Borst or A. D. & M. S. Squires, assumed by the contract of June 18th, and did not operate to change that contract from an executory to an executed one. So long as Borst could demand the purchase price only upon his delivery of the lumber on cars at Genesee Forks, this sale was an executory one, and his title to the lumber passed only as to that which he so delivered. Such is plainly the rule in the state of Pennsylvania, as appears from the following authorities: Pritchett v. Jones, 4 Rawle, 260; Sneathen v. Grubbs, 88 Pa. 147; Nesbit v. Burry, 25 Pa. 208; Mitchell v. Com., 37 Pa. 187; Strong, Deemer & Co. v. Dinniny, 175 Pa. 586, 34 Atl. 919; Dougherty v. Haggerty, 96 Pa. 515. And it is the law of that state that must control this case, inasmuch as the contracts and the alleged conversion occurred therein; and such also seems to be the rule in this state.

In the case of Terry v. Wheeler, 25 N. Y. 520, to which we are referred by plaintiff's counsel as an authority in his favor, it is said at page 525:

"If the payment was to be made on or after delivery at a particular place, it might fairly be inferred that the contract was executory, until such delivery."

See, also, Anderson v. Read, 106 N. Y. 333, 13 N. E. 292.

The setting apart and marking of such piles might operate as a sufficient "appropriation" and delivery of the same, if it were done under a contract of sale that permitted a delivery on the yard and required nothing more to be done than that the lumber sold should be identified; but the difficulty is that no such contract ever existed between Borst and A. D. & M. S. Squires. The only contract existing between them, viz: that of June 18th, required a very different delivery; and, never having been abandoned or modified, the so-called "delivery" by marking the piles was entirely inoperative to pass the title from Borst. I conclude that, upon the plaintiff's own showing, Borst has never made any contract or delivery under or by which his ownership of the logs or lumber at the mill had passed from him prior to his transfer of the same to these defendants, on November 26th. For this reason, their taking possession of such lumber under such sale was not a conversion thereof. Borst may be liable to A. D. & M. S. Squires for a breach of his contract, and A. D. & M. S. Squires may be liable to Parkhurst, French & Beard for a breach of their contract; but no conversion of the lumber has been shown. Neither ever owned the lumber for the conversion of which the plaintiff has recovered, and therefore this judgment must be reversed and a new trial granted.

Moreover, we are not entirely satisfied that Borst ever agreed to the delivery of the lumber at the mill, as claimed by the plaintiff and as is found by the referee. Borst, himself, denies that he ever so agreed, and there is the direct and positive evidence of several witnesses to the effect that he (Borst) distinctly stated that the lumber must remain his until it was on the cars and paid for, and that when the money stopped the lumber would stop. The weight of evidence seems to be that, while Borst did not object to Beard and Squires doing anything that they desired to do concerning the lumber, as between themselves, yet he never agreed to part with his own possession or interest in it, except through and in accordance with his contract of June 18th. Inasmuch as we are not willing to affirm the finding of the referee on that question, we reverse the judgment on both the law and the facts.

Judgment reversed on the law and facts, referee discharged, and new trial granted, with costs to appellants to abide event. All concur.