## Tallahatchie Lumber Co. v. Thatch.

[78 South. 154, Division B.]

1. SALES. *Delivery. What constitutes.*

A contract by the terms of which a saw mill agreed to manufacture lumber according to certain grades and specifications, the lumber to be stacked on its yards and afterwards to be loaded on cars according to grades and thickness as requested, under inspection of the buyer, which had made advancements, and agreed to pay the balance due when the "lumber was loaded out and bills of lading and tally sent in to the main office," did not of itself convey either title or possession of the lumber, since it was a contract for lumber to be cut and manufactured in the future, and the definite quantity finally to be accepted and paid for could not possibly be known until all lumber was finally inspected.

2. SALES. *Labor claims. Right to lien.*

In such case where the sawmill company, gave due bills to its employees, who cashed them at plaintiff's store assigning their wage claims to plaintiff, he could levy upon the manufactured lumber in the yards of the sawmill company, his rights being superior to those of the purchaser of the lumber.

3. LIEN. *Rights of purchaser. Advancements.*

Where a contract by which a sawmill company sold lumber to a lumber company; and received advancements of money did not provide for a lien in favor of the lumber company it had no lien by operation of law superior to the lien of employees for labor.

4. JUDGMENTS. *Rights of purchaser. Advancement. Lien.*

Where a sawmill company sold lumber to a lumber company and received advances upon the same the balance of the purchase

money not to be paid until the "lumber was loaded out and bills of lading and a tally sent in to the main office" and an inspection by the purchaser was had, which had not been done. In such case when plaintiff took assignments of labor claims against the sawmill company, his judgment against the sawmill company was conclusive against the purchaser of the lumber as to the indebtedness claimed and its character.

On suggestion of error overruled. For former opinion see 77 So. 532.

Appeal from the circuit court of Forest county. Hon. Paul B. Johnson, Judge.

Action between the Tallahatchie Lumber Company and C. F. Thatch. From a judgment for the latter, the former appeals.

The facts are fully stated in the opinion of the court.

*Tally & Mayson,* for appellant.

The vital question to be considered is this controversy is whether or not the claimant of property is absolutely barred and precluded from asserting any lien, claim of ownership to the property, because of the fact that in the principal proceeding the plaintiff therein had recovered a default judgment against the principal. In this case the learned circuit judge so held. He insisted that the *status* of the property was fixed by the judgment between the parties thereto and that no stranger or intervening party could assert any right to the subject-matter in the controversy.

The statute under which the suit between the original parties was brought, chapter 138, Acts, 1908, provides that the procedure under it shall be the same as that under section 3080, Code 1906, giving to seller a lien for the purchase money of goods. The practice under this latter statute is assimilated to the procedure to be followed in case of an attachment for debt. In attachment suits the trial of right of property shall not be had until

after judgment in favor of the plaintiff in attachment. Code 1906, Section 163.

A claimant of property under our procedure is held at bay—unable to assert any right, until after the disposition of the principal case. He cannot be heard in court and yet the court holds that he is precluded by a procedure in which he is denied any voice at all. It is believed, if the court's ruling is correct, it is somewhat in contravention of section 14 of the state Constitution.

In a contest between the plaintiff and a claimant the judgment in favor of the plaintiff, as against the claimant is not evidence of the facts on which it rests. *Ott* v. *Smith,* 68 Miss. 773, 10 So. 70. A judgment is evidence against parties and privies alone. It binds none others. *Howard* v. *Cousins,* 7 How. 115.

Plaintiff must show not only that he has a judgment, but that the property seized is liable to the debt. *Trice* v. *Walker,* 71 Miss. 968, 15 So. 787. Appellant was not prohibited, being a stranger thereto from impeaching the validity of the judgment, if it could show that it had rights that would be injuriously affected by it. 23 Cyc. 1068. The judgment of course might be valid as between the parties and voidable as to strangers, so then appellant could show that the court did not have jurisdiction. 23 Cyc. 1068.

The court could have only held that the judgment precluded appellant from asserting any rights on the theory that it was *res adjudicata.* It could have been on no other, It lacks several essentials of being *res adjudicata* as to appellant. Before a judgment is *res adjudicata* four things must be shown: Identity of the subject-matter of the litigation; identity of the cause of action; identity of persons and parties to the action; and identity of quality in the persons for or against whom the claim is made. *Creegan* v. *Hyman,* 93 Miss. 481, 46 So. 952.

The judgment in chief lacked several essentials of being *res adjudicata* as to appellant. The circuit court did not have and should not have entertained jurisdiction. There appeared to be one hundred and seventy-one different claims aggregating three hundred and six dollars and sixty-eight cents. Each claim of course constituted an independent cause of action. This court has very recently held that the chancery court was the proper forum in which to combine a number of claims of this kind in one suit. *Cooley* v. *Tullos et al.,* 76 So. 263.

The court though declined to reverse this case because of section 147, of the state Constitution. While the question of jurisdiction in the instant case may have been settled in favor of the appellee, if the sawmill company had raised it in the court below, in so far as the forum is concerned, still it could, in this court, challenge the jurisdiction of the court below as to the amount in controversy. *Andrews* v. *Wallace,* 72 Miss. 291, 16 So. 204.

The question of jurisdiction can be raised by a stranger to the record at any time. 23 Cyc. 1068; *Beryman* v. *Hutchinson,* 60 Miss. 872.

The orders were not negotiable and no suit could be instituted by the drawee, and while appellee claimed to be an assignee of the several alleged claims Mr. Thatch, the husband of appellee, testified that the assignments were made at the end of the month; the exhibit shows a mere order without consideration and not payable to anyone. They were mere merchandise checks issued for the convenience of the Mississippi company, not intended to be negotiable and were not so. No action could be predicated therein by the drawee, such instruments have recently been condemned as invalid by this court. *Ovett Land & Lumber Co.* v. *Wimmerly,* 109 Miss. 601, 190 So. 655.

The mere acceptance of orders, if such was done, did not give appellee a lien on any lumber. It merely created the simple relation of debtor and creditor between the parties to the original suit. Appellant was not permitted by the court to make an inspection of the so-called orders or assignment. The court would not permit it as it held the default judgment precluded appellant from making any inquiry into the question of the consieration on which the judgment was founded.

We are therefore of the opinion that this case ought to be reversed and judgment entered in this court for appellant.

*S. E. Travis* and *Currie & Currie,* for appellee.

In support of the legal contention that neither the title nor possession to this lumber was passed to the appellant at or before the time of the levy, we cite the following authorities: 1 Mechem on Sales, page 630, paragraph 754; same book page 631, paragraph 755, which reads as follows: ''That no title passes, ordinarily, during the progress of the work, is now clear. This rule prevails in this country, contrary to the latter, but in conformity with the early English Rule, notwithstanding that, by the terms of the contract, the purchaser was to pay and has paid a portion of the price, in installment as the work progressed. It also prevails, notwithstanding the fact, that the purchaser has furnished a part of the materials and, by the weight of authority, it prevails though the purchaser not only paid the price in the installment as the work progressed, but also, in person or by his agent, superintended the work of construction.''

Also the same book, page 635, paragraph 576, which is as follows: ''Especially all goods yet to be separated from larger mass, *a fortiori,* the goods are yet to be separated and set off from a larger mass.''

The foregoing authorities settled the law of this case so far as this point is concerned. This being true it at once becomes and is wholly immaterial whether the appellant had any notice of the lien or claim of the appellee, because in fact and law the title and possession of the lumber levied upon had not passed from the sawmill company to the appellant before the levy.

In the case of *Atwood* v. *Meredith*, 37 Miss. 635, reprint book 18, this court held that on a trial of the right of property levied on under execution, evidence of the nature and character of the debt, which is the foundation of the judgment, is irrelevant.

In the case of *Clinton Atkinson, et al.*, v. *A. E. Foxworth, administrator*, 53 Miss. 741, this court held that the sureties on a claimant's bond in attachment cannot assign errors in the suit between the judgment creditor and his debtor. In the collateral suit between the claimant and the judgment creditor, the claimant is bound by the judgment in the principal suit unless that judgment is void. We could cite innumerable authorities upon this question, but certainly it is unnecessary to do so, and we content ourselves with the two citations which amply demonstrate the correctness of the ruling of the lower court on that question. Chapter 131 of the Laws of Mississippi, 1908, created a lien upon the lumber of the sawmill company in favor of the employee to secure payment of their labor; and this lien, and these liens were assignable, and the record shows that they were assigned to the appellee before the institution of his suit.

In the case of *John D. Kerr et al.*, v. *William Moore*, 54 Miss. 286, it was held by this honorable court that the lien of a laborer acquired under the provisions of the act of April 5, 1872, Acts of 1872, page 131, like the lien of a mechanic, is assignable and his assignee may assert the claim and enforce the lien in same manner and to the same extent as the laborer.

The case of *Cooley, et al.,* v. *Tullos, et al.,* decided by this court on June 18, 1917, in which a suggestion of error was overruled on July 2, 1917, reported in Advance Sheets of the Southern Reporter, vol. 76, No. 2, at page 263, settles the question that the circuit court had jurisdiction to pronounce the judgments, if it chooses to do so, and that it is not essential that the action for the enforcement of such liens should be brought in the chancery court.

We respectfully submit that the peremptory instruction was properly granted and that the judgment ought to be affirmed.

Per Curiam.

The judgment appealed from in this case was affirmed without an opinion. The suggestion of error directs attention to the fact that this is the second suit which has presented for construction the written contract between the Tallahatchie Lumber Company and the Greenwood Sawmill Company, represents that other suits depend largely upon the construction of this contract, and suggests that an opinion should be written. In response to request of counsel for an opinion we outline briefly the facts and our conclusions on the points argued.

Appellee, C. J. Thatch, owned and operated a small country store near a sawmill owned and operated by the Greenwood Sawmill Company, a partnership composed of J. M. Cox and W. H. Mitchell. The owners of this sawmill manufactured hardwood into lumber, and operated at Maybank a small station in Forrest county. The Laborers of the Greenwood Sawmill Company bought groceries and other supplies from Mr. Thatch upon orders of the company, and to pay their accounts transferred and assigned in writing to Mr. Thatch their labor claims against the mill. The form of the written order which the sawmill company gave its laborers was substantially as follows:

"Mrs. C. J. Thatch, O. K. Order—— (name of employe) $——, Mdse. [Signed] Greenwood Saw Mill Co., Cox:——14."

In addition to this form of order, the declaration which was filed by appellee against the Greenwood Sawmill Company charges that the employees executed written assignments of their labor claims and the Greenwood Sawmill Company upon request failing to honor these orders, appellee, under chapter 131, Laws of 1908, sued to enforce a lien on the lumber and timber of the Greenwood Sawmill Company for the wages due the laborers, and assigned in writing to the appellee. A writ of seizure was duly issued as provided by statute, and levied on approximately five hundred thousand feet of hardwood timber in the yard of the Greenwood Sawmill Company at Maybank. Appellant, the Tallahatchie Lumber Company, a corporation, filed a claimant's affidavit, claiming to be the owner of the lumber levied upon. Cox and Mitchell, the defendants in the suit of appellee, interposed no defense, although personally served with process, and the cause proceeded to a final judgment against them on the debt issue and on the right of appellee as plaintiff to a lien upon the lumber levied upon. Issue was duly tendered and made up on the claimant's affidavit, and a trial had, resulting in a judgment for appellee. From this judgment the claimant appeals. On the trial of the claimant's issue appellant relied upon the following written contract:

"This contract made in duplicate and entered into this 15th day of June, 1914, by and between the Tallahatchie Lumber Co. of Phillip, county of Tallahatchie, state of Mississippi, party of the first part, and the Greenwood Sawmill Company, composed of W. H. Mitchell and J. M. Cox, of Greenwood, county of Leflore, state of Mississippi, party of the second part, witnesseth:

"The party of the second part bargains, transfers and sells to the party of the first part all of the gum,

oak, and magnolia lumber sawed at this sawmill located at Maybank, Mississippi, on the Gulf & Ship Island Railroad, during the next six months, estimated to be about one million feet at the rate of about fifteen thousand feet per day, at the following prices and terms and conditions specified:

"Plain red and white oak: 1s and 2s, $34.00; No. 1 common, $16.00; No. 2 common, $8.00.

"Sap gum: 1s and 2s, $12.50; No. 1 common, $10.50; No. 2 common, $8.50.

"Red gum: 1s and 2s, $20.00; No. 1 common, $10.50; No. 2 common, $8.50.

"Magnolia: 1s and 2s, $12.50; No. 1 common, $10.50; No. 2 common, $8.50.

"All of the above prices are for lumber f. o. b. cars Maybank, Mississippi, which lumber shall be approximately estimated by a representative of the party of the first part on or about the 26th of each month, an advance payment of nine dollars ($9.00) per M. ft. to be made by check or sight draft, and the party of the second part agrees to give the party of the first part their note for four months at the time of each estimate for like amount, the same to bear interest at (6%) six per cent., per annum, the first estimate in advance to be made June 26th, for about one hundred and fifty thousand ft. or more and all future estimates to be made for one hundred and fifty thousand ft. or more.

Sawing of this lumber shall commence at once. This lumber shall be sawed for thickness as per the instructions the party of the first shall specify from time to time in writing. All lumber covered by this contract shall be cut to the standard lengths of twelve, fourteen and sixteen foot (with as much fourteen and sixteen foot lengths as possible) and trimmed with the understanding that the usual percentage of short lumber will

be allowed according to the National Hardwood Lumber Association Rules. All lumber shall be cut entire square and plump enough so that when dry it will be up to the required thickness; no miscuts accepted.

"Promptly each and every day as the lumber is cut, it shall be taken and put on sticks at a distance of not less than one hundred and twenty-five feet from the mill or any other building, on good substantial foundations with plenty of pitch, and well up from the ground. This stock shall be stacked in narrow piles, with narrow crosses not over two feet apart on the gum or thirty in. apart on oak, the crosses placed at both ends so that lumber cannot check, and piled loosely (two to three inches air spaces in oak—four to six inches in gum) with plenty of pitch so as to avoid all stain possible, and the piles to be covered with three dollar oak or gum as soon as completed so as to keep the lumber from warping. Each grade and thickness of lumber shall be piled in separate stacks. Each length to be piled in separate stacks.

"The party of the second part shall load on cars according to grade and thickness we requested by party of the first part, whose representative shall inspect and measure same as it is being loaded. The party of the first part agrees that when lumber is loaded out and bills of lading and tallies sent in to the main office, to pay the balance due on same (this balance being the difference between the advance and the full price) less (2%) two per cent on the entire invoice.

"The party of the second part agrees, obligates and binds itself to the party of the first part to protect it against all claims or liens against the said lumber for timber or wages of employees of the party of the second part.

"In testimony whereof the Tallahatchie Lumber Company and the Greenwood Sawmill Company have signed

this instrument in duplicate this day and date above written.

> "Tallahatchie Lumber Co.,
> W. H. Dicks, Vice-Pres.
> Greenwood Sawmill Co.,
> "W. H. Mitchell,
> "J. M. Cox."

There was a peremptory instruction in favor of plaintiff, Thatch, and the granting of this instruction is the principal error assigned. The contentions of appellant are that the court erred in holding the final judgment of Thatch against the Greenwood Sawmill Company was conclusive against the claimant on the plaintiff's right to a lien upon the lumber seized; that there was a conflict in the testimony as to the possession of the lumber at the time it was levied upon, appellant contending that the Greenwood Sawmill Company had failed in business and virtually abandoned their lumber yard and turned all manufactured lumber over to the agent of appellant; that appellant had paid the full purchase price of the lumber, and was the owner thereof at the time the writ of seizure was levied; and that by virtue of the written contract aforesaid, title to the lumber passed in the process of its manufacture and before any of the lumber was seized; that in any event the contract operated as a pledge, and appellant had an equitable lien or claim for the money advanced or paid for the manufacture of the lumber; and that in all events a lien as to a portion of the debt sued for was barred by the statute of limitations of three months provided for in the statute.

We will first consider the principal point relied upon by counsel; that is, that the written contract operated to convey the title to the Tallahatchie Lumber Company before the lumber was finally loaded and shipped. While the time for delivery and the question whether delivery of personal property has in fact been made

is a question largely governed by the intention of the parties, this point is ruled by the case of *Hart* v. *Livermore Foundry & Machine Co.*, 72 Miss. 809, 17 So. 769, the facts of which are strikingly similar to those of the present case. The elaborate opinion of our court by COOPER, C. J., completely answers the contention that the title and possession of the lumber passed to the appellant. In the case at bar the Greenwood Sawmill Company was to manufacture the lumber according to certain grades and specifications. This lumber was to be stacked on the yards, and afterwards to be loaded "on cars according to grades and thickness, as requested by party of the second part, whose representatives shall inspect and measure same as it is being loaded." The balance due was not to be paid until the "lumber is loaded out and bills of lading and tally sent in to the main office." The contract further expressly provides "no miscuts accepted," and at another point that the Greenwood Sawmill Company obligated itself to protect appellant "against all claims or liens against the said lumber for timber or wages of employees of the party of the first part." It was a contract for lumber to be cut and manufactured in the future, and the definite quantity finally to be accepted and paid for could not possibly be known until all lumber was finally inspected. The prices, too, "are for lumber f. o. b. cars Maybank, Miss." The contract, then, upon its execution, did not in itself convey either the title or the possession.

Looking now to the proof, the facts as we interpret them do not show a material conflict as to the possession of the lumber at the time it was seized. According to the testimony of the witness Lee the lumber was all upon the yard of the Greenwood Sawmill Company at Maybank when it was levied upon, was "stacked around in different places," had not been loaded on cars, and was in the actual possession of Mr. "Jim

Cox.'' It is further shown that appellant had knowledge of Thatch's claim, and that its agent, Mr. Evans, wrote appellee as follows:

''Mr Cox has given us a statement of all the labor, contractors, and your account of three hundred one dollars and fifty cents and at any time that you feel these claims are not being given proper attention we would be glad to have you advise us as we are anxious to get the matter straightened out as quickly as possible.''

This letter was written from Philipp, Miss., by Evans, the agent of appellant company, January 8, 1915, and furthermore, Evans went down to Maybank in person and told appellee that if he would stop the attachment there was plenty of timber to pay everybody. It is true that Mr. Evans was introduced as a witness for the claimant and testified that the Tallahatchie Lumber Company was the owner of the lumber at the time the same was seized, but upon the cross-examination he stated that he was at Maybank as agent of the Tallahatchie Lumber Company; that the lumber at the time of its seizure was stacked on the yards; that it had not been loaded on cars; that no invoice or bills of lading had been issued; and that the only evidence of title was the written contract and the rights of appellant thereunder. The witness did state that in making advances or payments to the Greenwood Sawmill Company appellant had paid the full price of the lumber, the inference being that appellant had advanced under the contract more money than it should have advanced, and that it had not received sufficient lumber to make it whole in the transaction. There is no evidence that Evans had a final settlement with the Greenwood Sawmill Company, or that any money whatever was paid upon the lumber after Evans went to Maybank to take charge. Under these facts we think the creditors of the Greenwood Sawmill Company had a right to levy upon the manufactured products on the yards of the defendant

company. It would indeed be inequitable and contrary to public policy to permit the owners of a sawmill to contract with a purchaser for the entire output of the mill in a way to defeat the claims of employees and other necessary current expenses, without which logs could not be cut and hauled to the mill or the lumber sawn. The obvious purpose of the statute is to prevent any such result, so far as the employees of the sawmill are concerned.

Appellant has no equitable lien on the lumber, at least no lien superior to that of the employees. The contract does not expressly provide for a lien, and under the authority of *Allen* v. *Montgomery,* 48 Miss. 101, *Alexander* v. *Berry,* 54 Miss. 422, and *Hart* v. *Livermore Foundry & Machine Co., supra,* no such lien is given by operation of law. Further, on the question that title did not pass under the contract, the cases of *Mitchell* v. *Commonwealth,* 37 Pa. 187, *Hendricks* v. *Mocksville Furniture Co.,* 156 N. C. 569, 72 S. E. 592, *First National Bank* v. *Peck,* 61 App. Div. 258, 70 N. Y. Supp. 471, and *Smart* v. *Batchelder,* 57 N. H. 140, are in point.

We do not understand the rulings of the trial judge as precluding appellant from asserting its claim to the lumber, but simply that the claimant in a collateral attack on the judgment, which appellee then held against the Greenwood Sawmill Company, could not interpose those defenses which Cox and Mitchell might have interposed, or, in other words, that the claimant could not introduce evidence as to the character and nature of appellee's debt. The judgment of appellee against Cox and Mitchell was conclusive as to the indebtedness claimed and the character of that debt. This judgment was conclusive against Cox and Mitchell upon the right of appellee to enforce a lien upon the lumber; and, to defeat the *prima-facie* showing of appellee, the burden of proof was upon appellant to

show a prior title or superior lien. It showed neither lien nor title. This disposes of the right of the claimant to plead the statute of limitations as to a part of the indebtedness claimed by appellee. What right has appellant to apply for Cox and Mitchell the statute of limitations, unless appellant has superior claim to the lumber. On all points argued, the judgment was properly affirmed at a former sitting of this court, and the suggestion of error should now be overruled.

*Overruled.*