HARAWAY *v.* PLANTERS AGRICULTURAL CREDIT CORPORATION.

(Division A.   April 5, 1937.   Suggestion of Error Overruled May 3, 1937.)

[173 So. 448.   No. 32649.]

Gerald Chatham, of Hernando, for appellant.

Jas. R. McDowell, of Memphis, Tenn., for appellee.

Argued orally by **Jas. R. McDowell**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee, a corporation domiciled in Memphis, Tennessee, exhibited a bill of complaint against the ap-

pellant, administrator of the estate of A. M. Haraway, who died in July, 1936, the allegations of which, in substance, are that, on February 4, 1935, A. M. Haraway, deceased, who will hereafter be simply designated as Haraway, procured a loan of money from the appellee to secure which he gave a deed of trust on designated live stock and crops to be grown during 1935 on three designated plantations in DeSoto county, Mississippi. Haraway was also in possession of and operating three other small plantations. This loan of money to Haraway was made for the purpose of enabling him to grow crops during 1935 on the three plantations described in the deed of trust, and on the three small plantations operated by him but not described therein, and to enable him to supply other persons with money to make crops on other places operated by them. Haraway agreed to include in this deed of trust crops to be grown on the three plantations not described therein, and they were intended to be included therein by both Haraway and the appellee, but were omitted therefrom by a mutual mistake. Haraway also agreed to take deeds of trust on live stock owned, and crops to be grown, by persons to whom he should lend a portion of the money loaned him by the appellee, and, when taken, to deliver them to the appellee as collateral security for the money loaned him by it. Haraway loaned a portion of this money to others and received from them deeds of trust on crops as security therefor, but failed to deliver them to the appellee. The appellant now has in his possession cotton grown on the three plantations omitted from the deed of trust, and also by persons to whom Haraway loaned a portion of the money received by him from the appellee. The prayer of the bill is that the deed of trust be reformed so as to include the crops grown on the three plantations alleged to have been erroneously omitted therefrom, and that the appellee be decreed to have a lien on the crops delivered to the appellant under the deeds of trust taken by Haraway for money loaned

others, which deeds of trust he had promised to deliver to appellee as collateral security for the loan to him. There was also a prayer for general relief. The case was heard on bill, answer, and proof, and a decree was rendered denying the appellee a reformation of the deed of trust.

A master was then appointed to ascertain what portion of the money, if any, loaned by appellee to Haraway was actually applied by him to the growing of crops on the three plantations omitted from the deed of trust, who reported that $1,172.67 had been so applied. A decree was rendered again denying the appellee a reformation of the deed of trust, and also denying it a lien on the cotton in the hands of the appellant obtained by him under the deeds of trust executed to Haraway by persons to whom he had loaned a portion of the money received by him from the appellee, but granting it a lien on the cotton grown on the three plantations omitted from the deed of trust to secure payment of the $1,172.67 applied by Haraway to the expense of growing the crops.

By direct appeal, the appellant complains of the lien granted the appellee, and by cross-appeal the appellee complains of the refusal of the court below to reform the deed of trust, and to grant it a lien on the crops grown by persons to whom Haraway had loaned money secured by the deeds of trust hereinbefore mentioned.

Counsel for appellee make no contention in his brief that the court below erred in not reforming the deed of trust, saying, ''I shall not discuss the question of whether the deed of trust should have been reformed, because inasmuch as a lien was established by the court, the effect is the same.'' He then proceeds to argue the correctness of the lien given appellee on the crops omitted from the deed of trust to secure payment of the money actually applied to the production thereof.

Counsel for appellant says that the bill of complaint contains no specific prayer for the granting of this lien, and that it was not so framed as to permit the granting

thereof under the general prayer for relief. This may be true, but it is not necessary for us to so hold, and we express no opinion thereon.

The evidence does not disclose that any portion of the money loaned by the appellee to Haraway was allocated, when the loan was made, to the making of crops on any particular one of the plantations operated by Haraway. On the contrary, it was directed solely, prior to the appointment of the master, of an attempt to prove that Haraway agreed to execute a deed of trust on crops to be grown on all six plantations to secure the whole of the loan made by the appellee to him. But, if any specific portion of the money had been loaned to Haraway for the making of a crop on specifically designated land, that fact would not entitle the appellee to an equitable lien on the crops grown thereon to secure the payment of money advanced for the making thereof. Weathersby v. Sleeper, 42 Miss. 732; Allen v. Montgomery, 48 Miss. 101; Alexander v. Berry, 54 Miss. 422; Hart v. Livermore Foundry Co., 72 Miss. 809, 17 So. 769; Tallahatchie Lumber Co. v. Thatch, 117 Miss. 260, 78 So. 154, and Strong v. Krebs, 63 Miss. 338.

It may be, though that fact is not clear, that the evidence discloses that Haraway agreed to ship all the cotton raised by him to the appellee for, sale by it, and application of its proceeds to the debt due by Haraway to it, but no equitable lien arises from such an agreement. Allen v. Montgomery, and Alexander v. Berry, supra. In order for the equitable lien here claimed to arise, there must have been an agreement between Haraway and the appellee clearly indicating that they intended to make the crops grown on the plantations omitted from the deed of trust a security for that portion of the money loaned to Haraway, and applied by him to the making of such crops, 3 Pomeroy's Equity Jurisprudence (4 Ed.), section 1235, 37 C. J. 315, and the record discloses no such an agreement.

Under the appellee's evidence, the only lien it could

acquire on this cotton was that which would have resulted from a reformation of the deed of trust, which the court correctly declined to reform.

The appellee's case rests mainly on the testimony of its vice president, who, while evidently attempting to tell only the truth as to what occurred, was somewhat confused in his recollection thereof. On direct examination, he said that the agreement for the loan to Haraway was made by him in his office in Memphis, on February 4, 1935, on which day the deed of trust was executed by Haraway, and that the agreement between them was that the crops on all six of the plantations operated by Haraway were to be included in the deed of trust. He did not say how three of Haraway's plantations came to be omitted therefrom, except to say that he was not present when the deed of trust, which he did not read, was prepared by his stenographer. He did not say what directions, if any, he gave this stenographer, who did not testify, but did say, in substance, that it was his custom, after making an agreement to lend money, to call his stenographer, give her directions for preparing the papers therefor, which she would then prepare with the assistance of the person to whom the money was to be loaned. On cross-examination after his memory had been refreshed in reference thereto, he admitted that he was in Florida on the day the deed of trust was executed, and said he had his dates confused; that he had such an agreement with Haraway before February 4, 1935, and after his return from Florida, Haraway told him the omitted plantations had been included in the deed of trust. The loan to Haraway was actuallly made and the deed of trust taken on February 4, 1935, by the appellee's then and now treasurer, who had full authority to act in the matter. This treasurer did not testify, and there is no evidence whatever as to what occurred between him and Haraway when the loan was made. The absence of this evidence is a fatal defect in the appellee's case, both as to its claim for a reformation of the deed of

trust, and for the equitable lien granted it in the court below, the evidence in support of which, before either can be allowed, must be clear and convincing.

The agreement which the appellee and cross-appellant says was made by Haraway to pledge the deeds of trust, including, we will assume, the debts thereby secured, to appellee as additional security for money loaned him by it, if made, was not consummated by delivery of the deeds of trust to appellee. Appellee says, however, that, if this agreement to pledge the deeds of trust was made, though not consummated by delivery thereof, a court of equity, under the maxim, "Equity regards that as done which ought to be done," should grant it a lien on the cotton, and we will assume, but merely for the sake of the argument, that if the evidence disclosed that the agreement here claimed by the appellee was in fact made, the equitable lien claimed by it would arise.

The appellee's vice president testified that the appellee in 1934 loaned money to Haraway secured by a deed of trust on crops, and by pledge of chattel mortgages of the character here in question, and that he agreed with the witness to pursue the same course as to the loan of 1935.

But, as hereinbefore pointed out, the loan to Haraway was made by the appellee's treasurer, in the absence of the vice president, and as this treasurer did not testify, it does not appear what the agreement, on which the loan was then made, was. The equitable lien here sought, therefore, does not arise.

The court below apportioned the court costs between the appellant and the appellee, but since the appellee was not entitled to any relief, it should pay all of such costs.

The decree will be affirmed, except in so far as it granted the appellee an equitable lien on the cotton grown on the three plantations omitted from the deed of trust, and taxes the appellant with a portion of the court costs, which provisions of the decree will be eliminated.

So ordered.